## Moses Buck v. William Smith.

*Equity jurisprudence : Specific performance : Mutuality.* Equity will not enforce specific performance of a contract upon one side where the duties to be performed on the other side are such as to be incapable of being specifically enforced.

*Partnership : Specific performance.* An agreement to enter into a partnership which is silent as to the duration of the partnership will not be specifically enforced; since such a partnership may be dissolved at the will of either partner as soon as it is formed.

*Specific performance : Personal skill and judgment.* Courts of equity cannot assume to specifically enforce an agreement to enter a co-partnership, and as a member of the firm to use and exercise personal skill and judgment according to the shifting needs of property and business from time to time, in the control and management for the firm of the partnership business; and they will not, therefore, enforce the other side of a contract of which such an agreement is the counterpart.

*Heard January 15.     Decided April 8.*

Appeal in Chancery from Cheboygan Circuit.

*Moses Buck*, in person, and *D. W. Perkins*, for complainant.

*C. I. Walker*, for defendant.

GRAVES, CH. J.

This is an appeal by complainant from a final decree by the circuit court for the county of Cheboygan in chancery, dismissing the bill.

The record is quite imposing, but it is unnecessary to repeat much of it, or to enter into a minute or extended discussion. There are several grounds of objection more or less serious to any explicit relief in equity. Our attention will be chiefly confined to one which is insuperable.

The bill is by the complainant against Smith alone, to compel a specific performance and for incidental relief. The leading and material features of the case which the complainant sets forth, and on which his equity is grounded, may be briefly indicated.

He states in substance that in 1867, George W. Swan, John R. McArthur, William McArthur and John F. McDonald were in partnership under the name of McArthur & Co.; that the members of the firm owned as tenants in common a large amount of pine lands in the counties of Cheboygan, Presque Isle, Otsego and Emmet, in this state, and mills, water power and other real property, the said Swan and John R. McArthur holding an undivided half; that the firm also owned and held there a very large and valuable personal property, consisting, among other things, of lumber, timber, shingles, store goods, teams, tools, machinery and the like, suitable for large lumbering operations; that the firm were carrying on the business of manufacturing and selling lumber on an extensive scale, using the pine on the lands before mentioned as needed; that Smith resolved to purchase the interest of Swan and John R. McArthur and then to enter into partnership with the other proprietors, namely: McDonald and William McArthur, with the view of erecting new mills, improving the property in various ways, and carrying on the lumber business; that in contemplation of such purchase and the institution of such firm, it was understood between complainant and Smith that the purchase, when effected, should be for their joint benefit; that Smith should advance the required funds for the purchase, and so much as should be necessary in carrying on the operations of the expected partnership, and should take the title; that complainant,

being skilled and having experience in such business, should be a partner in the contemplated firm, and should put in his special skill and his services, and in that way, and from the profits and gains in the business, make up his share of the outlay; that complainant was to remove to Cheboygan and be an active co-partner in the new firm, and be the general manager of the business, and exercise the general control and supervision.

It is then stated that Smith proceeded to buy the half interest of Swan and John R. McArthur, and on the 26th of November, 1867, took a conveyance in his own name, and that shortly afterwards, and on the 10th of January, 1868, he and complainant, in furtherance of the foregoing understanding between them, entered into the following written agreement:

"Memoranda of agreement, made this 10th day of January, A. D. 1868, by and between William Smith, of Westfield, New York, of the first part, and Moses Buck, of East Saginaw, Michigan, of the second part, witnesseth; that said Smith claims to own and be possessed in fee simple of certain lands, water-power and personal property, same purchased of John R. McArthur and Geo. W. Swan, by their deed of November 26th, 1867. Now the said Smith hereby agrees to sell, and convey, by deed of quit-claim, to said Buck, one-half of said purchase, being one-fourth part of all said property described in said McArthur and Swan's deed, situate in the counties of Cheboygan, Presque Isle, Otsego and Emmet, in the state of Michigan,—five dollars is hereby acknowledged,—and said Buck agrees to pay fourteen thousand dollars in five years from November 26th, 1867, with interest, annually, at twelve per cent. per annum, and also one-half of all improvements and expenditures to erect mills, cut logs, and do all and every part of the necessary outlay for a general lumber manufacturing business; also, to go and reside at Cheboygan, and attend personally and industriously to said lumbering business; it is further agreed that none of the personal effects connected with

this purchase shall be claimed or used by said Buck for other purposes than the company business in connection with said lumbering establishment, so long as any part of said payment remains unpaid; but said Buck shall have right to pay any and all such sums at any time, when and as fast as he so elects; and the said Smith agrees to deed whenever so fully paid, from profits of business or otherwise."

It is not unworthy of notice that the bill does not allege that complainant had any understanding or agreement with either William McArthur or McDonald, two of the proprietors who were to be parties to the contemplated partnership, that he was to become a partner with them or be admitted to the control and supervision of any interest they had or might have.

After the written contract with Smith, complainant alleges that he proceeded to act up to the spirit of his arrangement with him; that he was ready and desirous to enter into the projected partnership, and ready and anxious to assume and take upon himself the management and control of the property and affairs; and that he paid to Smith, by the note of one William Peter, one thousand and seventy dollars of the consideration; that notwithstanding this, the defendant and the other co-proprietors,—McDonald and William McArthur,—disregarded the arrangement so made with him by Smith, and entered into a partnership among themselves and excluded him altogether, and deprived him of his chance to employ his skill and services as it had been agreed between himself and Smith that he might and should do. The bill then further states that some time afterwards McDonald transferred one-half of his interest to William McArthur, who conveyed an equivalent interest to one Ward B. McArthur, and that thereupon Smith, McDonald and the two McArthurs became co-partners in the lumber business on the property in question under the name of McArthur, Smith & Co.; that the business has been and is being carried on by that firm very extensively

29 MICH.—22.

and with very large gains; that much valuable timber has been and is being cut off, and that the whole property is of great value. The bill asks a specific performance of the agreement, an accounting, and such relief by injunction as will protect the complainant's interests.

We consider it very clear that the case which the complainant makes by his bill is not suitable for the jurisdiction invoked. The power vested in courts of equity to compel the specific performance of contracts, instead of leaving parties in all cases to obtain common-law redress through actions for damages, is a very useful one when legitimately exercised. It must, however, be borne in mind that the jurisdiction has many necessary limits and qualifications, and that it does not necessarily attach or operate with imperative force wherever a contract relation exists which the complainant has respected and the defendant has not. In each case the court must consider whether, in view of all the facts and those doctrines which are interwoven with the very texture of equity jurisprudence, and in view of the specific peculiarities presented, and the settled principles and maxims of the court, it is right and proper to entertain the case and administer relief.—*McMurtrie v. Bennette, Har. Ch., 124; Smith v. Lawrence, 15 Mich., 499; Chambers v. Livermore, 15 Mich., 381; Millard v. Tayloe, 8 Wall., 557.*

Among the primary considerations is the question whether the substantial sense and design of both parties can be worked out by the decree of the court, since the real equity of the proceeding, the spirit of the particular jurisdiction, means performance on both sides and not a compulsory surrender by one party to another without a present substantial and practical equivalent, an equivalent susceptible of enforcement and execution by the court.

Now, what is the real essence of the case made by this bill? What is the arrangement the court is asked to carry out? It is an agreement, according to the representation of complainant, between himself and the defendant, by

which the latter agreed to convey an undivided interest in real and personal property held by defendant in common with third persons, and that the complainant should, for an indefinite time, become a partner with the defendant and such third persons in operating the property; that the defendant should advance from time to time the complainant's quota of the funds necessary for the business and the improvement of the property; that the complainant should have the right to manage and direct the business and the improvements; and that he would employ his time, skill, judgment and experience in the direction and supervision of the property and business, and that the purchase price of his proprietary share, and the amount advanced for his benefit in carrying on the business, should be paid by his skill and services in the concern, and the gains obtained in the enterprise.

Waiving all objection founded on the circumstance that the bill does not assert that McDonald and McArthur became in any manner engaged with complainant to admit him to a partnership, or to clothe him with any right or power to manage their interests, we first encounter the rule, which is pretty well recognized, that the court will not enter upon so vain an undertaking as to compel a party to go into a partnership where the agreement is silent as to its duration, and where, therefore, it may be dissolved at the will of either as soon as formed.

But, secondly, we confront the inevitable and very formidable objection that the agreement by its very nature is practically not enforceable on both sides.

It is extremely plain that the court cannot assume to enforce the performance of daily prospective duties, or supervise or direct in advance the course or conduct of one who is to control and manage in the interest of a firm in which he is to stand as a member, and where, too, the stipulated arrangement as plainly set forth contemplates that his personal skill and judgment shall be applied and govern according to the shifting needs of property and business. No court is competent to execute such an

arrangement.    The complainant's portion of the executory
scheme, then, which relates to his introduction to the posi-
tion of partner and manager, to his rights and duties in
that position and to the agreed method for working out
the compensation to be made by him for the benefit he
seeks, cannot be specifically enforced.    Looking at the case
made by the bill, the court is powerless to execute the
equivalent the complainant is bound to render.    If a con-
veyance to the complainant should be ordered, he would get
at once the essence of what he claims, whilst the defendant
would fail in getting, through a decree, any substantial con-
sideration whatever.

As the court possesses no means by which to work out
performance on the part of the complainant, he would be-
come at once invested with the benefit for which he prose-
cutes, whilst the defendant would be left standing upon a
naked right to exact the consideration through the future
performance of duties incapable of being specifically decreed.
The doctrine of the court will not sanction such one-sided
relief.—*Blackett v. Bates, L. R., 1 Chy. App., 117; Stocker
v. Brockelbank, 5 E. L. & E., 67; Johnson v. Shrewsbury
& B. R. W. Co., 19 E. L. & E., 584; Pickering v. Bishop
of Ely, 2 Y. & Coll. C. C., 249; Kemble v. Kean, 6 Sim.,
333; Kimberley v. Jennings, 6 Sim., 340; Baldwin v.
Society for Diffusing, etc., 9 Sim., 394; Gervais v. Ed-
wards, 2 Dr. & W., 80; Bozon v. Farlow, 1 Mer., 459;
Flight v. Bolland, 4 Russ., 298.*

It is, then, very apparent that, apart from other difficul-
ties, the case presented by the bill is wanting in mutuality,
and is not so constituted as to warrant the court in giving
the relief demanded.    As a consequence, the decree below
dismissing the bill must be affirmed, with costs, but to
preclude all question as to the effect of it, it may be so
varied as expressly to be without prejudice to any proceed-
ings at law the complainant may think proper to take.

CAMPBELL and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.