GREEN *v.* BAY CITY & PORT HURON RAILROAD CO.

1. SPECIFIC PERFORMANCE—CONTRACTS—RAILROADS—PROMOTERS.
   It being provided in a contract that complainants should ob-
   tain right of way for a railroad from Port Huron to Bay
   City, and defendants should advance the necessary funds, not
   exceeding $2,500, and that the complainants should have
   authority to condemn private property in the corporate name,
   a demurrer lies to a bill of complaint for specific perform-
   ance, setting forth the contract and showing that complain-
   ants had condemned no right of way, although more than
   the maximum amount had been advanced by defendant,
   since the complainants' failure to perform by condemning
   right of way is apparent from the averments.

2. SAME—MUTUALITY—ENFORCEABILITY—EQUITABLE JURISDICTION.
   Specific enforcement of a contract will not be required which
   provides for unperformed services of the complainants of
   such a personal and continuing character that supervision by
   the court is impracticable in securing performance of com-
   plainants' undertaking.

Appeal from St. Clair; Tappan, J.  Submitted June 9,
1909.  (Docket No. 25.)  Decided November 5, 1909.

Bill by Charles M. Green and Charles M. Green, Jr.,
copartners as Charles M. Green & Son, against the Bay
City & Port Huron Railroad Company for the specific
performance of a contract.  From an order overruling a
demurrer to the bill, defendant appeals.  Reversed.

*Walsh & Walsh* (*C. R. Black*, of counsel), for com-
plainants.

*Elbert V. Ingersoll* and *William L. Carpenter* (*De
Vere Hall*, of counsel), for defendant.

MONTGOMERY, J.  This case is before us on demurrer
to a bill for the specific performance of a contract by
which complainants agreed to do the work necessary and

bear the expense of procuring a right of way for a railroad from the city of Port Huron to the village of Lexington, in consideration of the payment to them of the sum of $30,000, to be paid in advances, made to complainants for the purpose of procuring the right of way, and by a supplemental agreement the balance to be paid out of the proceeds of bonds to be issued and sold by the company, or bonus notes or such other means or methods as the company might control. As a further consideration, the railway company agreed to pay complainants 250 shares of paid-up stock in the company.

The bill avers that the complainants did procure nd convey to the party of the second part the right of way for its railroad outside of the city of Port Huron so far as it was possible to procure the same without condemnation proceedings, and that it was agreed between the complainants and defendants that, where it was necessary to commence condemnation proceedings, the same should not be done until all the rights of way that could be procured without condemnation proceedings had been procured. The bill then avers that the complainants have used their utmost diligence, and fully completed all the covenants, conditions, and agreements by them to be performed under their contract, as amended and modified, with said defendant, in so far as it was possible for them to do, and that they stand ready to perform such portions thereof as they were prevented from performing by the failure of said defendant to do what was necessary by them to be done.

We quote three essential provisions of the contract:

" (6) The party of the first part hereby agrees to immediately commence the work of securing said rights of way and options and franchises so far as the same shall not have been secured and to prosecute the securing of the same with the greatest diligence; and to complete the same if possible by the first day of February, 1905.

"(7) And to enable said parties of the first part to carry out their agreements in this respect, the party of the second part agrees to advance the cash necessary for that

purpose as follows:   One thousand dollars upon, or within five days after, the signing of this agreement and the balance in amounts as required for the completion of said work, the parties of the first part agreeing to keep this amount down so far as they can, and in no event the amount required for advances to exceed twenty-five hundred dollars.

"(8) It is expressly understood that the parties of the first part shall have the privilege of commencing and conducting all condemnation proceedings necessary to enable them to obtain the required rights of way in the name of the party of the second part, but the same to be at the expense of the party of the first part.   The money necessary therefor or the damages assessed shall be advanced by party of the second part as required, but upon final settlement shall be deducted from the consideration above mentioned."

The bill avers that $2,900 had been advanced to the complainants to enable them to procure rights of way, but that nearly four years have elapsed since the entering into of said contract, and that the defendants have done nothing towards the construction of said railroad from Port Huron to Bay City.

The several grounds of demurrer urged in this court are that it appears that the defendant has advanced more money than the contract calls for, and that complainants have not, as appears by the bill, performed the terms of their contract; that, as the bill fails to aver any special or peculiar value in this stock, or any reason why it cannot be obtained in the open market, a bill to specifically perform a contract to deliver stock will not lie under such circumstances; and lastly, that there is a want of mutuality in this:  That if a specific performance were decreed, it would leave defendant without any security that the remainder of the contract to be performed on the part of the complainant would be executed; that is, that there would be no security to the defendant that the right of way would be procured where condemnation proceedings are necessary, and that a court of equity will not undertake the enforcement of personal services by either a complainant or defendant.

The first contention is determined by a construction of the paragraphs 6, 7, and 8 above quoted.    We think these provisions should be construed as contended for by defendant. Paragraph 6 provided that the complainants should immediately commence the work of securing rights of way and options "so far as the same shall not have been secured and to prosecute the securing of the same with the greatest diligence; and to complete the same if possible by the first day of February, 1905."    Paragraph 7 provides that to enable the parties to carry out their agreement in this respect, "the party of the second part agrees to advance the cash necessary for that purpose," $1,000 upon the signing of the agreement, and the balance in amounts as required for the completion of said work, the parties of the first part "agreeing to keep this amount down as far as they can, and in no event the amount required for advances to exceed twenty-five hundred dollars."    Paragraph 8 provides that the party of the first part shall have the privilege of commencing and conducting all condemnation proceedings necessary to enable them to obtain the required rights of way in the name of the party of the second part, but the same to be at the expense of the party of the first part, and then provides that the money necessary therefor or the damages assessed "shall be advanced by the party of the second part as required, but upon final settlement shall be deducted from the consideration above mentioned."    Paragraph 6, it will be observed, is the only one imposing a duty upon the complainants of proceeding to procure rights of way.    Paragraph 8 confers upon the complainants the authority to commence proceedings in the name of the defendant, but at the expense of complainants.    Paragraph 7 places a restriction upon the amount of money to be advanced, fixing it at the sum of $2,500.    We see no reason for saying that this limitation does not apply to money advanced for the purpose of securing rights of way by whatever means the complainants were authorized to use.

We also think the contention of the defendant that the

contract is not mutual in such a sense that a court of equity will enforce it specifically should be sustained. The rule is general that where a defendant's nonenforceable promise has not been performed, and is of such a character that the court cannot undertake to supervise its execution, the remedy by specific performance would be denied, and the complainant left to his remedy at law. 6 Pomeroy on Equity Jurisprudence, § 771; and see, as bearing upon the question, *Buck* v. *Smith*, 29 Mich. 166 (18 Am. Rep. 84).

The demurrer should have been sustained by the circuit judge. The order overrling the demurrer will be reversed, with costs.

Grant, Hooker, and Moore, JJ., concurred with Montgomery, J.

Ostrander, J. I concur upon the second point, namely, that the remedy by specific performance is inappropriate, and should be refused.