HETH v. SMITH.

1. EQUITY—DEMURRER—PLEADING.
    The rule that facts clearly and distinctly stated in a bill are deemed true on demurrer does not extend to conclusions or contradictory statements.

2. SPECIFIC PERFORMANCE—EQUITY—MUTUALITY OF REMEDY.
    In equity, a parol contract to lease land for the life of the tenant who binds himself in lieu of rent to perform personal services of an indefinite nature, not to be completed

in one act, and involving special knowledge, skill, judgment or integrity, or like qualities depending on individual ability, requiring the continuous performance of duties, such that a court of equity could not well regulate, is not specifically enforceable.[1]

3. SAME—CONTRACTS—LANDLORD AND TENANT.

To entitle a complainant to specific performance there must be in the first instance a valid agreement, and also at the time of the suit a mutuality of remedies as well as of obligations.

4. SAME.

Where complainant, who had for a number of years leased premises of defendant at an annual rental, arranged orally with his landlord to construct a house on the premises, which he should occupy as long as he lived, reserving certain rooms for the lessor, and thereafter managed the property, collected rentals, and attended to the sale of part of the premises, as a part consideration for the use and occupation, paying no rental in cash, being assured at different times by the lessor that the complainant might occupy the premises as long as he lived, and where complainant departed from the State for upwards of a year, leaving his son in possession of the premises, the bill alleging performance of the contract on complainant's part and commencement of summary proceedings by defendant to dispossess the son, offering further performance of services of the nature described, a demurrer to the bill of complaint should have been sustained on the ground that complainant's promises contained in the agreement were not performed and could not be fulfilled until the end of his life, and that remedies were not mutual in equity, in favor of both parties to the contract.

Appeal from Kent; Perkins, J. Submitted January 29, 1913. (Docket No. 88.) Decided May 28, 1913.

Bill by Edward W. Heth against Charles W. Smith and Wansey Farm Realty Company for specific enforcement of a lease. From an order overruling a de-

[1] As to the enforcement of contracts of service by courts of equity, see note in 6 L. R. A. (N. S.) 1115.

murrer to complainant's bill, defendants appeal. Reversed.

*Smedley, Linsey & Lillie,* for complainant.

*Walker & Fitzgerald,* for defendants.

STEERE, C. J. This case comes before us on an appeal taken from an order of the circuit court of Kent county, in chancery, overruling defendants' demurrer to a bill of complaint asking specific performance of a contract to give complainant a life lease of certain premises in the city of Grand Rapids and to restrain summary proceedings instituted to evict him from said premises.

The condensed portions of the somewhat lengthy bill of complaint material to an understanding of the issue are as follows: In 1866 defendant Charles W. Smith, a resident of Cooperstown, N. Y., then owning "a large farm" lying adjacent to the city of Grand Rapids, leased the same to complainant for a period of seven years, at an annual rental of $100 a year. At the time of said lease the farm was badly run down where cleared; 40 acres not being cleared and covered with oak grubs. The buildings were a one-story three-room house and a small barn without doors. Complainant immediately took possession of the premises, according to the terms of his lease, and proceeded to improve and cultivate the same. He added five rooms to the house, moved the barn and put a basement under it, cleared the 40 acres of oak grub land at a cost of $20 an acre, planted an orchard of 200 trees, hauled fertilizer from the city and enriched the impoverished portions of the land, getting the place in good condition in about three years' time. In the fall of 1873, while on a trip to New York, he visited Smith at his home in Cooperstown and called attention to the fact that the lease of the farm would expire the following March, and asked what Smith's intentions

were in that connection. Smith expressed himself as well satisfied with complainant's services and said he desired complainant to continue in occupation on his own terms and enjoy the improvements which he had made, and "under that agreement your orator continued in possession of said premises." Two or three years later defendant Smith, being in Grand Rapids, visited the farm, and in talking matters over suggested that a new house be built; Smith to furnish the material and complainant to do the work and occupy the house as long as he lived, with the exception of two front rooms, which were to be reserved for Smith. This was agreed upon, and they together planned a house and picked out the location where it should be built. "The house was built according to agreement." The two rooms were prepared and reserved for Smith to occupy whenever he desired to do so, as it was contemplated he would, but he never occupied them.

Complainant with his family continued to reside upon said premises until March, 1885, at which time his wife died. His children had then grown up and made their homes elsewhere, and it was therefore complainant's intention to get a smaller place on which to spend the rest of his days, of which he informed Smith, who discouraged him, stating that when they built the house upon said premises it was agreed between them that complainant "should occupy the same as long as he lived," and that he hoped some of complainant's sons would continue to occupy it after complainant had departed this life; that he never intended to sell that part of the property where the house stood, bounded by South Division street, Stevens street, and the railway right of way. After this talk and these assurances from Smith complainant agreed with Smith to "remain on the place and continue to look after the property as long as he lived," which he has always done and still continues to do, making said house his home, being the only home-

stead he has, and has kept it in repair and made various improvements on it, looking after the interests of Smith in the balance of the property he owned in that locality.

Prior to this time complainant had engaged in the business of truck farming on said land and regularly paid rent, but such use of the land was no longer possible, as the price of real estate had enhanced in the vicinity of said premises so that Smith leased and sold nearly all the adjoining property, except the lot upon which the house was situated, "and so, under agreement with said Smith," complainant did not thereafter pay any rent in cash, but "your orator gave his attention to locating manufactories on the land of said Smith and making a long lease or sale of the same for him," resulting in six factories and other institutions being located on the premises near the residence of complainant. In further elucidation of that subject the bill states:

"Your orator further shows unto the court that at this time he did not pay any rent in cash, as it was agreed between your orator and said Smith that your orator was to rent the property belonging to said Smith as much as he could, to collect the rents thereof and remit the same to said Smith in lieu of cash rent, and that there has been no year during all this time that your orator has not remitted to said Smith from $100 to $200, which he has collected in rents from the people whom he got to locate upon the property of said Smith; and your orator offers to continue to act as agent and to perform the same duties he has heretofore performed for said defendant. * * * Since the making of the agreement heretofore set forth between said Smith and your orator, he has kept the premises in good repair and the house well painted, put into said house plumbing and a heating plant and bathroom at an expense of over $300, put a new roof on the barn and on part of the house, added stable room and sheds for the accommodation of Smith's tenants who were renting pasture grounds on said premises, and generally cared for the interests of

Smith as though they were his own, all of which things he did in pursuance of his contract and agreement with Smith, relying upon the promise that he should have possession and occupation of the premises described in the bill of complaint as long as he lived."

In March, 1908, complainant went to Independence, Mo., to establish his two youngest sons in business there, leaving another son, Bert M. Heth, in possession of the premises. In May, 1908, Smith visited Grand Rapids, and while there told complainant's son that the house needed repairs and painting, after which, in reliance upon the previous agreement that he was to have possession and use of the premises as long as he lived, complainant painted the house, made repairs, and put in sewer connections. In May, 1909, while complainant was absent in Missouri, Smith again went to Grand Rapids and "in violation of his contract and agreement with your orator" rented the premises to another party, demanding possession from complainant's son, which was refused. Complainant returned in August, 1909, to Grand Rapids, as he had always intended to do, his absence being "only temporary," and "again took possession of the premises described herein as his home," and has ever since had possession thereof. Complainant alleges that, were it not for said agreement with Smith, he would not have devoted his time to caring for said premises nor built said house, nor made the other expenditures and improvements as before stated, and that said agreement that he should have a life lease was the consideration therefor. In April, 1909, Smith conveyed said premises with other property to the Wansey Farm Realty Company, of which said Smith claims to be the general agent, by deed which was duly recorded. On the 12th of May, 1910, said Realty Company instituted summary proceedings against Bert M. Heth, son of said complainant, to recover possession of the property.

Complainant alleges that he has never been compensated for his time and services, as stated, and avers—

"That he has fulfilled all of the terms of the agreement and contract with said Charles W. Smith whereby he obtained a life estate in said premises, and that he now offers for the term of his natural life to continue to fulfill and perform all the conditions of said contract and agreement."

Also that—

"He cannot in the proceeding at law before the circuit court commissioner recover compensation for the improvements which he has made on the premises, worth $1,000, nor obtain in said proceedings his life estate in said premises."

The prayer for relief asks specific performance of the contract by which complainant "was granted a life lease of the premises," which are described at length, being a lot 40 by 60 with its appurtenances, known as 88 South Division and Stevens streets. An injunction restraining the proceedings at law instituted to evict his son and from commencing any other suit to recover possession of said premises is also asked.

Defendants' demurrer is in 12 separate paragraphs, setting up as many reasons why complainant's bill is insufficient. It is claimed that the contract was invalid because oral; that defendant Smith is not a proper party to this suit; that no sufficient and specific acts of performance on complainant's part are stated; that the alleged contract is indefinite, ambiguous, and uncertain, not mutual in its terms; that complainant did not constantly recognize and at all times treat the same as binding upon him, but at various times violated and disregarded the same; that he has been fully compensated for his services, and, if not, damages can be recovered by him in an action at law; that his claims are inconsistent and repugnant; that the acts

to be done and the services to be rendered by complainant, according to the allegations in the bill, were personal services to continue over an indefinite period of time, specific performance of which cannot be enforced against him, and therefore said contract is incapable of enforcement by decree in his favor for specific performance, the remedy not being mutual.

In considering the bill on demurrer, all facts clearly and distinctly stated are to be taken as true; such is not the case with conclusions nor with contradictory statements.

The bill in its general aspects states clearly that over half a century ago, in 1866, complainant rented a large farm lying near the city of Grand Rapids from defendant Smith and took possession thereof "according to the terms" of a written lease; the only terms of the lease given are that it was for seven years at an annual rental of $100 per year. After the expiration of the written lease complainant continued in possession, as a tenant, of all or part of said "large farm" to the time of filing this bill, under oral agreements with Smith. The first oral agreement was that he "could continue upon said place," and "* * * that the terms could be made by your orator himself." The terms he made are not stated, except by inference; but "under that agreement your orator continued in possession," until 1885 when his wife died, and his children, having previously grown up, had moved away. This oral lease on his own terms, whatever it was, had been supplemented in 1875 or 1876 by an oral agreement for a new house on the place; the material being furnished by Smith and the labor by complainant, who "was to occupy the house as long as he lived." No information is given as to the size or cost of the house. Apparently considering his tenancy as optional, complainant was about to throw it up and leave after the death of his wife, when Smith called his attention to the agreement made when the house

was built, said he would not sell the property the house stood on, and expressed the hope that some of complainant's boys would live there after complainant was dead. Complainant then agreed to remain and look after the premises and the interests of Smith as long as complainant lived. After that time he paid no money rent and ceased to cultivate the land as a truck farmer, but "under the agreement with Smith your orator gave his attention to locating factories on the land of said Smith and making a long lease or sale of same for him." He also collected rent, "as much as he could," and remitted the same to said Smith "in lieu of cash rent."

At the time his wife died he had occupied this large farm, put in good condition three years after he went there, for 18 years, paying $100 a year for seven years, and on terms "made by your orator himself" for 11 years, living one-half of the time in the house now in controversy. Except for the year and five months he was in Missouri engaged in starting two of his sons in business, complainant has, so far as disclosed by the bill, occupied the house 37 or 38 years and expended on it $1,000. From the story told in the bill we fail to discover any compelling equitable considerations to necessarily turn the balance in favor of specific performance, and now consider the more strictly legal aspect of the case.

Up to 1885, according to the statements in his bill, complainant regarded the oral contracts which had been made as in their nature unilateral or optional with him, and he had concluded, after his wife died and his children were gone elsewhere, that he would go also and "get a smaller place on which to spend the rest of his days." Smith "discouraged the idea," but made no new promises touching a life lease, except to call attention to the agreement made when the house was built and inform complainant he would never sell it, whereupon it is stated complainant him-

self agreed with Smith he would remain and look after the premises and Smith's interest in the balance of the property as long as he lived. This is the final agreement treated by the bill as binding on both parties. By it his obligations were for personal service, "in lieu of cash rent."

The bill states complainant faithfully performed those services at all times, and also states that he went to Missouri in March, 1908, and returned in August, 1909, during which time Smith visited Grand Rapids twice, finding complainant absent and his son Bert M. Heth in possession of the property; on the second visit Smith rented the house to another, demanding possession, not of complainant, who had been absent over a year, but of the son whom Smith found in possession. The summary proceedings instituted before the commissioner a year later to obtain possession of the premises were not against complainant, but the son. At that time complainant had returned from his "only temporary" absence and "again taken possession of the premises described herein as his home." The bill fairly states that for nearly a year and one-half he was absent in another State, not in possession of the property nor rendering the personal services he had contracted to perform in lieu of cash rent. To the contrary of this the bill also avers that he has fulfilled all the terms of his agreement whereby he obtained a life estate in the premises, and "now offers for the term of his natural life to continue to fulfill and perform all of the terms and conditions of said contract and agreement," recognizing that there yet remains on his side personal services and continuous duties, running on contemporaneous with the lease.

Specific performance of these services at the instance of defendants could not be decreed. Contracts for affirmative personal service consisting of a suc-

cession of acts, the performance of which cannot be consummated in one transaction, but must continue for a time, definite or to become definite, and which involve special knowledge, skill, judgment, integrity, or other like personal qualities, the performance of which rests in the individual will and ability, and involving continuous duties which a court of equity could not well regulate, are not, as a rule, enforceable by decree for specific performance. Waterman on Spec. Perf. §§ 33-49; Pomeroy on Spec. Perf. §§ 307-310.

To entitle a party to specific performance there must, in the first instance, be a valid agreement, and also at the time of the suit a mutuality of remedies as well as of obligations. Waterman on Specific Performance of Contracts, § 196; 2 Pomeroy's Equity Jurisprudence, § 769. The rule is fully recognized by this court. *Buck* v. *Smith*, 29 Mich. 166 (18 Am. Rep. 84) ; *Blanchard* v. *Railroad Co.*, 31 Mich. 43 (18 Am. Rep. 142) ; *Green* v. *Railroad Co.*, 158 Mich. 436 (123 N. W. 4).

While the doctrine of mutuality is firmly established in the courts of equity, it is to be recognized, as contended by counsel for complainant, that there are numerous exceptions and abundance of authority where, under the particular circumstances shown, an exception is declared, but the principles under which exceptions are recognized are not applicable to the facts made clear by complainant's bill.

In this case complainant's nonenforceable promises are not fully performed and cannot be until the close of his life; if he is granted specific performance against defendants, and then fails to perform on his part, they are remediless in a court of equity; giving relief to complainant would leave the defendants to the law court for relief, if anywhere. This is one of the tests which disposes of the so-called exceptions to the rule of mutuality, and under the conditions shown

here the rule of mutuality applies. Upon that objection alone the demurrer should have been sustained. In this view of the case it becomes unimportant to consider the other grounds of demurrer.

The remedy by specific performance is inappropriate, and the order overruling defendants' demurrer is reversed, with costs. A decree may be entered in this court sustaining the demurrer and dismissing the bill, without prejudice, of course, to any proceedings at law complainant may desire to take.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.