310 So.2d 872

**LORCH, INC., a corporation**

v.

**BESSEMER MALL SHOPPING CENTER, INC., a corporation.**

**SC 1010.**

Supreme Court of Alabama.

March 20, 1975.

Rehearing Denied April 24, 1975.

Macbeth Wagnon, Jr. and Paul A. Liles, Birmingham, for appellant.

18

McEniry, McEniry & McEniry, Besse-mer, for appellee.

MERRILL, Justice.

This is an appeal from a decree of the Circuit Court of Jefferson County enjoining the defendant Lorch, Inc. from advertising any "going out of business" sale at its store in the West Lake Mall Shopping Center in Bessemer, Alabama, and directing Lorch not to go out of business at that location.

In December, 1968, Lorch entered into a lease with Si-Mac Realty. Plaintiff Bessemer Mall Shopping Center, Inc., is Si-Mac's successor in interest. Lorch agreed to lease some 10,700 square feet for a period of approximately 15 years, commencing November 6, 1969 and terminating January 31, 1985, at a fixed minimum annual rental of $32,400.00 plus 4% of Lorch's gross sales over $648,000.00. In addition, Lorch agreed to pay certain operating and insurance expenses, to join the Mall tenants association, to provide seasonal decorations, and to participate in joint promotional efforts.

The lease also contained the following covenants:

"Section 8.1. Affirmative Covenants. Tenant covenants at its expense at all times during the Lease Term and such further time as Tenant occupies the Leased Premises or any part thereof:—

*   *   *   *   *   *

"C. Except when and to the extent that the Leased Premises are untenantable by reason of damage by fire or other casualty, continuously and uninterruptedly to use for retail sales purposes all of the Leased Premises other than minor

portions thereof as are reasonably required for storage and office purposes; to use such storage and office space only in connection with the business conducted by Tenant in the Leased Premises; to furnish and install all trade fixtures; to carry a full and complete stock of seasonable merchandise; to maintain adequate trained personnel for efficient service to customers; to open for business *and remain open during the entire Lease Term* during all business hours on all days when other stores in the Shopping Center are open for business, including those evenings established by Landlord; and to light its display windows and signs, if any, from dusk until 11 P.M. on all business days.

\* \* \* \* \* \*

"Section 8.2. Negative Covenants. Tenant covenants at all times during the Lease Term and such further time as Tenant occupies the Leased Premises or any part thereof:—

\* \* \* \* \* \*

"B. Not to injure, overload, deface or otherwise harm the Leased Premises; \* \* \* nor conduct any auction, fire, 'going out of business' or bankruptcy sales; nor do any act tending to injure the reputation of the Shopping Center; \* \* \* ."

Lorch opened a combination jewelry, furniture and appliance store in the space it had leased. During each year of its operation, however, Lorch's Bessemer Hall store operated at a substantial loss.

The Mall has two "major" department stores, Sears, Roebuck and Grants. Neither the Sears nor Grants lease has continuous operations clauses.

When the Mall was opened, one of the major tenants was a Kroger grocery store. But in 1972, Kroger vacated its premises. Since that time there has not been a grocery store in the Mall. The Kroger lease did not contain a continuous operation clause.

There have been eight tenants with continuous operations clauses which have been permitted to go out of business. However, two of the eight tenants going out of business went bankrupt. A third was taken over by another company. All the tenants going out of business except Kroger were minor tenants.

In the last three years, Lorch's yearly gross sales have never exceeded $250,000.00. In order for the percentage rental to be activated, gross sales would have to exceed $648,000.00.

In May of 1974, Lorch began advertising and conducting a "going out of business" sale.

On September 6, 1974, Lorch's president wrote the managing agents of Bessemer Mall stating his intention to terminate Lorch's business operations at Bessemer Mall and to vacate the premises by October 1, 1974.

On September 24, 1974, Bessemer Mall commenced this action. ARCP 65. A temporary injunction [1] was issued on October 11, 1974, and amended on October 23, 1974, restraining Lorch " \* \* \* from advertising any 'going out of business' sale in its location on the leased premises in West Lake Mall Shopping Center and directing the Defendant not to go out of business at the location of the Defendant's leased premises at West Lake Mall Shopping Center in Bessemer, Alabama, and to continuously and uninterruptedly use for retail sale purposes said leased premises; to carry a full and complete stock of merchandise, to maintain adequate personnel, to open for business and remain open during all business hours during all days that the other stores in the shopping center are

---

1. All orders refer to the "temporary" injunction and we follow that terminology in the opinion. It is the same as the preliminary injunction provided for in Rule 65, ARCP. A previously issued TRO had been dissolved.

open for business, and to light its display windows and signs from dusk to 11:00 p.m. on all business days, all of which it covenanted to do in Section 81C of the lease; to continue to do so until further orders of this court."

Lorch does not assign as error that part of the trial court's decree which restrains Lorch from *advertising* any "going out of business sale."

It is undisputed that appellant has stated its intention to go out of business. The issue on this appeal is not whether Lorch's proposed termination of its business operations at Bessemer Mall would amount to a breach of its lease. The only issue presented on this appeal is whether the trial court erred in issuing its injunction, or decree of specific performance, requiring Lorch to continue its merchandising operations at the Bessemer Mall.

"The equitable remedy of specific performance and that by injunction against breach of a contract have much in common, * * * the jurisdiction exercised is in substance the same, and the general rules apply in the one case as in the other. Generally, an injunction to restrain a breach of contract operates as, and affects all the purposes of, a decree for specific performance. It is one of the methods for the enforcement of contracts, and if the contract is one which would ordinarily be specifically enforced, an injunction may be awarded where this is the most appropriate form of relief." Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321.

In determining whether or not a temporary injunction should have issued, wide discretion is accorded the trial judge hearing the application and making the decision, and, where no abuse of that discretion is shown, his action will not be disturbed on appeal. American Radio Association, AFL–CIO v. Mobile Steamship Association, Inc., 291 Ala. 201, 279 So.2d 467 affirmed 419 U.S. 215, 95 S.Ct. 409, 42 L.

Ed.3d; Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281, 239 So.2d 298; Drake Associates, Inc. v. Letson, 277 Ala. 512, 172 So.2d 536.

But as stated in 5A C.J.S. Appeal and Error § 1591, p. 66:

"The discretion exercised by the trial court is, however, a legal or judicial one which is subject to review for abuse or improper exercise, *as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law* * * * and, where an abuse of discretion is clearly made to appear, the appellate court will reverse the order or decree. * * * *" (Emphasis supplied.)

Appellant contends that the decree of the trial court violates an established principle of equity. We agree.

The rule was stated in Tombigbee Valley R. R. Co. v. Fairford Lumber Co., 155 Ala. 575, 47 So. 88, as follows:

"* * * 'Contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill, or judgment in such oversight, * * * are not, as a rule, specifically enforced.' Pomeroy on Specific Performance of Contracts, § 312, and cases cited in note 5; Waterman on Specific Performance of Contracts, § 49; Electric Co. v. Mobile, *supra.* [109 Ala. 190, 195, 19 So. 721] * * *."

In Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co., 109 Ala. 190, 19 So. 721, the rule was stated thusly:

"The general doctrine is that a court of equity will decree specific performance only when it can dispose of the

matter in controversy by a degree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law. * * *"

For other cases to the same effect see Ex parte Jim Dandy Company, 286 Ala. 295, 239 So.2d 545; George Moulton, Inc. v. Langan, 285 Ala. 427, 233 So.2d 74; Black Diamond Coal Mining Co. v. Jones Coal Co., 200 Ala. 276, 76 So. 42; Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 So. 423.

It is obvious that the relief requested in the instant case is not capable of present performance. Special knowledge, skill and judgment is necessarily involved in selecting and investing in inventory, selecting, training, and compensating adequate personnel, and innumerable other day-to-day business decisions. No case has been cited where this court has ever required continuous, affirmative acts of the type requested here.

Bessemer Mall contends that the cases cited supra were decided exclusively on mutuality of remedy, not complexity and duration of performance. We disagree.

It has been held that mutuality in equitable remedy is essential to the right to specific performance, Electric Lighting Co. v. Mobile & Spring Hill Railway Co., supra; Tombigbee Valley R. R. Co. v. Fairford Lumber Co., supra. It is also true that in most of the cases cited above lack of mutuality of remedy was a consideration, but it was not the sole consideration.

It would seem that length and complexity of performance plus difficulty of supervision may, by themselves, be sufficient grounds for denial of specific performance in cases of the type here presented.

This lease contract contained the usual covenants and provisions relating to remedies and awards of damages for noncompliance with the contract. The denial of injunctive relief does not leave the lessor without remedies at law.

Reversed and remanded.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.