**MADISON PLAZA, INC.,**
Plaintiff-Appellant,

v.

**SHAPIRA CORPORATION,**
Defendant-Appellee.

No. 1-978A262.

Court of Appeals of Indiana,
First District.

April 3, 1979.

Rehearing Denied May 16, 1979.

Leininger, Echert & Alcorn, George A. Leininger, Jr., Madison, for plaintiff-appellant.

Cooper, Cox, Jacobs & Kemper, Gary K. Kemper, Madison, James E. Fahey, Fahey & Gray, Louisville, Ky., for defendant-appellee.

LOWDERMILK, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant Madison Plaza, Inc. (Madison Plaza) brings this appeal after the Jefferson Circuit Court refused to issue an injunction requiring defendant-appellee Shapira Corporation (Shapira) to continue operating a retail store in Madison Plaza's shopping center pursuant to a lease executed by Madison Plaza and Shapira.

### FACTS

Madison Plaza owns a shopping center in Jefferson County. Shapira executed a ten-year lease on April 19, 1974, and occupied approximately one fifth of the total space available at the shopping center.

Shapira's store in Jefferson County opened for business on October 21, 1974. Although Shapira made conscientious, per-

sistent efforts to operate the store profitably, sales declined[1] and losses mounted.[2]

The trial court listed reasons for the financial problems suffered by Shapira in Jefferson County:

"A number of factors were responsible for the Madison store operating at a loss. The store sold medium-priced merchandise, nationally advertised branded merchandise, and was not discount oriented. The other stores in the center would not participate in any promotional activities such as rides, antique shows and the like, designed to attract customers to the center. This was another factor accounting for the loss operations of the Madison store. General economic conditions including layoffs and strikes resulted in higher unemployment in Madison. This contributed to the downfall of the Madison store."

On May 9, 1977, Shapira informed Madison Plaza that it intended to hold a final sale during May 1977 and then vacate the premises. Madison Plaza responded with a letter informing Shapira that Shapira would not be permitted to discontinue operation of its store in the shopping center.

Shapira did vacate the premises but has continued to pay its monthly rent, which amounts to $37,125 annually. The trial court listed the damages suffered by Madison Plaza as a result of Shapira's departure:

"A. One-fifth (⅕) of the center is vacant and is not contributing to the pulling power of the center;

B. The vacancy projects an image of failure to the public;

C. The closing has caused plaintiff's center to lose that group of customers shopping for clothing and shoes;

D. Financing for future expansion will be more difficult to obtain because of the vacancy;

E. Future expansion of the center will be more difficult because the vacancy projects an image of failure discouraging prospective tenants from locating in the center;

F. Plaintiff is put in a difficult negotiating position with prospective tenants because of the vacancy;

G. The empty space is more difficult to lease when it is vacant than if Shapira Corporation were doing business;

H. The Shapira space will be difficult to lease to a new tenant because of its large size and because it was built specifically to Shapira Corporation specifications;

I. Plaintiff will not collect any additional percentage rent from defendant during the term of the lease if defendant is not doing business;

J. The loss of pulling power into the center by the Shapira vacancy will result in lower gross sales by the other tenants and will cause plaintiff to lose percentage rents from the other tenants in the center."

The trial court nevertheless refused to issue an injunction requiring Shapira to continue operating its store in Madison Plaza's shopping center. The trial court stated two reasons for its refusal, each of which is set forth hereinafter.

## ISSUE

The issue presented by this appeal is not whether Shapira has breached its lease. The only issue is whether the trial court erred in refusing to grant an injunction requiring Shapira to continue operation of its store in Madison Plaza's shopping center.

## DISCUSSION AND DECISION

We quote the first reason given by the trial court for denying Madison Plaza's request for an injunction:

1. Gross sales:

|  | February | March | April |
|---|---|---|---|
| 1975 | $20,500 | $27,100 | $21,427 |
| 1976 | 13,500 | 15,200 | 19,581 |
| 1977 | 9,758 | 12,600 | 13,433 |

2. Losses:

|  | Year ended 1/31/76 | Year ended 1/31/77 |
|---|---|---|
| Jefferson County store | $47,800 | $53,200 |
| Allocated home office expense | 22,000 | 18,600 |
| Total loss | $69,800 | $71,800 |

"The provision in the lease entered into by the parties that the tenant shall keep the premises open and available for business 'except when prevented by strikes, fire, casualty or other causes beyond the tenant's reasonable control' relieves the defendant from continuing to operate its store at Madison Plaza because all reasonable efforts were made by the defendant which were calculated to cause the store to operate profitably. Nevertheless, despite such efforts, the store lost very substantial sums of money in its operation and thus its successful, i. e. profitable, operation was beyond the reasonable control of the defendant."

The provision of the lease to which the court referred reads as follows:

"Tenant shall during the entire term, continuously use the demised premises for the purpose stated in this lease, carrying on therein Tenant's business undertaking diligently, assiduously and energetically. Tenant shall maintain on the premises a substantial stock of goods, wares and merchandise, and equipment, adequate to assure successful operation of Tenant's business, and shall employ clerks, salesmen and other employees sufficient for the service and convenience of customers. *Tenant shall keep the premises open and available for business activity therein during all usual days and hours for such business in the vicinity except when prevented by strikes, fire, casualty, or other causes beyond Tenant's reasonable control,* and except during reasonable periods for repairing and decorating the premises." (Our emphasis)

Also included in the lease is the following provision:

". . . *Tenant shall not vacate,* assign, mortgage, underlet or sublet *the leased premises* or any part thereof or permit the same to be occupied by anyone other than Tenant *without the written consent of Landlord.*" (Our emphasis)

■ Madison Plaza contends that the inability of Shapira to operate its store profitably should not be deemed a cause beyond Shapira's control which would excuse Shapira from keeping the store open and available for business activity.[3] We agree.

The general rule is that performance will not be excused simply because a contract causes hardship or proves to be unprofitable. *Allied Structural Steel v. State* (1970), 148 Ind.App. 283, 265 N.E.2d 49. Justice Traynor explained in *Lloyd v. Murphy* (1944), 25 Cal.2d 48, 153 P.2d 47, 50, that "[t]he purpose of a contract is to place the risks of performance upon the promisor . . . ."

Shapira executed a lease in which it promised that it would "during the entire term, continuously use the demised premises for the purpose stated in this lease, carrying on therein Tenant's business undertaking diligently, assiduously and energetically." Shapira further agreed that it would not vacate the premises without the consent of Madison Plaza.

When the trial court recognized unprofitability as an excuse releasing Shapira from its duty to operate its store on the leased premises, the trial court erroneously imposed upon Madison Plaza (the promisee) the risk of unprofitable performance by Shapira (the promisor). We repeat Justice Traynor's remark: "The purpose of a contract is to place the risks of performance upon the promisor . . . ."[4]

We hold that the trial court erred in concluding that Shapira's inability to earn a profit excused Shapira from its obligation to continue operation of its store on the leased premises.

---

3. In L. Simpson, Law of Contracts § 186, at 375–76 (2d ed. 1965), appears this comment in a section captioned "Provision in Contract Excusing Nonperformance":

"As to the phrase 'other causes beyond the control' of the promisor, used in connection with the preceding phrase 'strikes or fires,' it is to be restricted in its meaning to other causes of a similar nature to strikes or fires, and does not cover an inability to perform due to the promisor's inability or inexperience in the business. . . . ."

4. *Lloyd v. Murphy* (1944), 25 Cal.2d 48, 153 P.2d 47, 50.

We quote a portion of the second reason given by the trial court for denying Madison Plaza's request for an injunction:

"A. The lease provides for the operation by the defendant of a junior department store on the leased premises for a period of ten years commencing October 21, 1974, and ending October 31, 1984. In order to operate a junior department store, the defendant must exercise special knowledge, taste, skill and judgment in selecting and investing in inventory, selecting and training and compensating adequate personnel needed to operate the store, and in making innumerable other day-to-day business decisions. A decree of specific performance would require the Court to maintain constant supervision over a long period of time of acts involving taste, skill, judgment and technical knowledge in order to enforce the decree.

\*     \*     \*     \*     \*     \*

F. Should the Court undertake specific performance of the lease, it would become involved in a long and complicated administration of the affairs of the defendant and such control over the affairs of the defendant is out of keeping with the character of the Court's primary function.

G. The enforcement of a decree of specific performance would unreasonably tax the time, attention and resources of the Court."

Madison Plaza contends that this conclusion of law is contrary to law and is not supported by sufficient evidence. More specifically, Madison Plaza insists that court supervision would not be required: The trial court would merely decree that Shapira must operate its store; Shapira, for its own benefit, would make efforts to operate its store profitably; if Shapira did not honor the injunction, Madison Plaza would file contempt proceedings.

Specific performance is an equitable remedy which is not available as a matter of right. It may be resisted on weaker grounds than are required for its maintenance. The granting of specific performance rests in the sound judicial discretion of the trial court. *Neel v. The Cass County Fair Association* (1968), 143 Ind.App. 339, 240 N.E.2d 546. A court may properly deny a request for specific performance if such a decree would require supervision by the court for a lengthy period of time. *Risk v. Thompson* (1958), 237 Ind. 642, 147 N.E.2d 540.

Madison Plaza relies primarily upon the case of *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.* (1960), 63 N.J.Super. 384, 164 A.2d 785.[5]

In *Dover, supra,* the New Jersey court on review affirmed the granting of a mandatory injunction requiring a tenant in a shopping center to reopen its retail bakery business, to keep the store open during regular business hours with a manager or salesperson in charge, and to keep a sign posted identifying the business operation. By contrast, Madison Plaza asks this court to reverse the judgment of the Jefferson Circuit Court in which it refused Madison Plaza's request for an injunction requiring Shapira "... to continuously use the demised premises for the purpose stated in the lease and requiring it to maintain on the premises a substantial stock of goods, wares, merchandise and equipment adequate to assure the successful operation of its business and to employ clerks, salesmen and other employees sufficient for the service and convenience of customers and to keep the premises open and available for business activity during all usual days and hours." (Complaint filed June 24, 1977)

The findings of fact made by the trial court in the case at bar reveal the extensive and varied tasks and talents involved in

---

5. Both Madison Plaza and Shapira have cited opinions of courts in other states. Also, an annotation entitled "Lease of Store as Requiring Active Operation of Store" can be found at 40 A.L.R.3d 971. The specific terms of the lease and the particular facts involved must be examined carefully in each case, however, and no purpose would be served by burdening this opinion with detailed analysis of the similarities and dissimilarities between the case at bar and each case cited by the parties.

operating Shapira's retail department store. Shapira's undertaking contrasts markedly with the retail bakery sales which apparently required the services of one salesperson in *Dover, supra.* Although the entry of an order requiring Shapira to continue operation of its store would be a simple matter, such an order would be ill-advised if the trial court had insufficient ability to enforce its order.[6]

Madison Plaza directs attention to the nature of the damage which the trial court found Madison Plaza would suffer, and Madison Plaza emphasizes the obvious difficulty in attempting to prove money damages as a result of Shapira's refusal to operate its business. Madison Plaza quotes from *McKain v. Rigsby* (1968), 250 Ind. 438, 444, 237 N.E.2d 99, 103:

> " 'It is not enough to defeat injunction that there is a remedy at law. It must be as plain, complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity. *Xenia Real Estate Co. v. Macy*, 147 Ind. 568, 572, 573, 47 N.E. 147; * * *' *Meyer et al. v. Town of Boonville et al.* (1904), 162 Ind. 165, 70 N.E. 146."

Madison Plaza, however, overlooks the reason, specifically stated by Chief Justice Lewis at page 445 of 250 Ind., at page 103 of 237 N.E.2d, the above quotation is included in *McKain, supra:*

> "These cases support the principle that a trial court has discretion as to whether or not to grant a temporary injunction even when there is a theoretical remedy at law and it is the duty of the Court to look at the remedy and measure its fullness and its adequacy as it applied in the case at bar. This general principle harmonizes with the other principles concerning the dispensation of equitable relief."

In *McKain, supra,* our Supreme Court was searching for an abuse of discretion in granting an injunction. In the case at bar we must search for an abuse of discretion in denying an injunction. An abuse of judicial discretion ". . . is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts before the court or against the reasonable, probable and actual deductions to be drawn therefrom." *Guraly v. Tenta* (1956), 126 Ind. App. 527, 531, 132 N.E.2d 725, 727. Although Judge Sullivan made the following statement in *Henline, Inc. v. Martin* (1976), Ind.App., 348 N.E.2d 416, 420, in the context of reviewing a default judgment, the statement is appropriate also in the case at bar:

> ". . . the fact that another trial court might not have abused its discretion by granting . . . relief on these facts, does not necessarily mean that the court below abused its discretion by denying relief."

Due to the lengthy period of time involved, the nature and size of Shapira's business operation, and the detailed nature of the relief sought by Madison Plaza in its complaint, we cannot say that the Jefferson Circuit Court's judgment is clearly against the logic and effect of the facts before the court. We hold that the trial court did not abuse its discretion when it denied the equitable relief sought by Madison Plaza.

Judgment affirmed.

LYBROOK, P. J., and ROBERTSON, J., concur.

---

6. An injunction requiring Shapira to maintain "a substantial stock of goods, wares, merchandise and equipment adequate to assure the successful operation of its business" would appear to be totally futile in light of Shapira's past experience at the location.