**8600 ASSOCIATES, LTD.,**
**Partnership, Plaintiff,**

v.

**WEARGUARD**
**CORPORATION, Defendant.**

**No. 90–CV–70750–DT.**

United States District Court,
E.D. Michigan, S.D.

May 17, 1990.

---

I.W. Winsten, Honigman Miller Schwartz and Cohen, Detroit, Mich., for plaintiff.

Larry R. Shoffner, Jaffe, Snider, Raitt & Heuer, P.C., Detroit, Mich., for defendant.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

HACKETT, District Judge.

Plaintiff 8600 Associates, Ltd. owns the Bel Air Centre, a shopping center in the City of Detroit. Bel Air is the first major shopping center built in Detroit in a number of years. Defendant Wearguard is a national chain of retail stores selling work clothing and uniforms. Defendant currently operates nine stores in southeastern Michigan. The parties entered into a 10 year lease in March, 1987. This lease contains a covenant for rental payments and a covenant requiring defendant to operate its store for the entire lease term at hours established by the lease. The lease also contains a clause in which the parties agreed that the landlord shall be entitled to mandatory injunctive relief in the event the tenant fails to operate as required by the lease. Wearguard is not an "anchor" store at Bel Air Centre and occupies approximately one percent of the center's retail space.

Defendant asserts that its Bel Air Centre store has consistently lost money during its two years of operation. By letter dated February 1, 1990, defendant notified plaintiff of its intent to terminate its lease and vacate the premises. Plaintiff brought this action in the Michigan Circuit Court for the County of Wayne. The circuit court judge entered an *ex parte* temporary restraining order enjoining defendant from closing its store at the Bel Air Centre in order to preserve the status quo. The case was subsequently removed to this court and plaintiff brought this motion for preliminary injunction, seeking an order that defendant continue operating its Bel Air Centre store.

In determining whether or not to grant a preliminary injunction, the court must consider:

1) Whether plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether plaintiff has shown irreparable injury;

3) Whether issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir.1982) (citing *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977)).

Traditional principles of equity also guide the court in determining the appropriateness of a preliminary injunction. A court in equity will not decree performance of a promise if that performance is of such character that the court would be required to continuously supervise its execution.

*Diamond Lumber Co. v. Anderson*, 216 Mich. 71, 85, 184 N.W. 597 (1921) (citations omitted). If a court would be required to assume continuous duties of supervision, injunctive relief is inappropriate and must be denied, leaving the complainant a remedy at law. *Laker v. Soverinsky*, 318 Mich. 100, 27 N.W.2d 600 (1947); *Green v. Bay City & Port Huron R.R. Co.*, 158 Mich. 436, 440, 123 N.W. 4 (1909).

 The courts which have previously considered the question of the appropriateness of an injunction to enforce a continuous operation clause of a commercial lease have not reached unanimous results. Some courts have issued injunctive relief, ordering stores to remain in operation as provided by continuing operation clauses in the lease agreements. *See, Dover Shopping Center, Inc. v. Cushman's Sons, Inc.*, 63 N.J.Super. 384, 164 A.2d 785 (1960); *Lincoln Tower Corp. v. Richter's Jewelry Co.*, 152 Fla. 542, 12 So.2d 452 (1943). Other courts have declined to issue injunctive relief on the basis that the injunction would require continuing court supervision of an ongoing retail business. *See, Lorch, Inc. v. Bessemer Mall Shopping Center, Inc.*, 294 Ala. 17, 310 So.2d 872 (1975); *Madison Plaza, Inc. v. Shapira Corp.*, 180 Ind.App. 141, 387 N.E.2d 483 (1979); *Price v. Herman*, 81 N.Y.S.2d 361 (1948), *aff'd*, 275 A.D. 675, 87 N.Y.S.2d 221 (1949); *Grossman v. Wegman's Food Markets, Inc.*, 43 A.D.2d 813, 350 N.Y.S.2d 484 (1973); *Security Builders, Inc. v. Southwest Drug Co. Inc.*, 244 Miss. 877, 147 So.2d 635 (1962); *Sizeler Property Investors, Inc. v. Gordon Jewelry*, 544 So.2d 53 (La.App. 1989). These courts have held that "[s]pecial knowledge, skill and judgment is necessarily involved in selecting and investing in inventory, selecting, training and compensating adequate personnel and innumerable other day-to-day business decisions." *Lorch, Inc. v. Bessemer Mall Shopping Center, Inc.*, 294 Ala. 17, 310 So.2d 872, 876 (1975). It is, therefore, within the court's discretion to refuse an injunction to enforce a continuous operations clause in a lease agreement where it would unreasonably tax the time, attention and resources of the court. *Madison Plaza, Inc. v. Sha-*

*pira Corp.*, 180 Ind.App. 141, 387 N.E.2d 483 (1979).

 The court determines that the decisions denying injunctive relief reflect the modern trend and the majority rule. The court finds the reasoning of those cases persuasive and declines to extend its supervision over a commercial tenant by means of an injunction. As the Michigan Supreme Court noted in *Laker v. Soverinsky*, 318 Mich. 100, 27 N.W.2d 600 (1947), "[a] mandatory injunction to compel defendant to furnish services during the term of the lease ... would require continuous supervision by this court. Specific performance will not be decreed under such circumstances." *Id.* at 104, 27 N.W.2d 600.

Plaintiff contends that it has no adequate remedy at law because of the impossibility of measuring the harm that would be caused by defendant's closing its store. Plaintiff argues that it will lose customers drawn to the center by the Wearguard store and those who may perceive Bel Air as a failing center if stores are allowed to close. Plaintiff also argues that other marginal tenants may close their stores if these lease clauses are seen as unenforceable.

The court finds that plaintiff has an adequate remedy at law. The harm suffered by the plaintiff is strictly economic, making money damages an adequate remedy. This court agrees with the decision in *Drabbant Ent. v. Great Atlantic & Pacific Tea Co.*, 688 F.Supp. 1567 (D.Del.1988), "[t]he loss of business and customers ... tenants in the ... Shopping Centers are allegedly suffering and will continue to suffer is necessarily economic.... Purely economic injuries are generally compensable and do not require injunctive relief." *Id.* at 1573–74. It should be noted that there is a real question of whether a store operating at less than its required sales volume and posting losses is actually a "draw," to the extent that its leaving would constitute irreparable injury to a shopping center.

In summary, plaintiff has an adequate remedy at law in that its damages are purely economic and it retains the right to relet the retail space. Plaintiff has re-

tained this right in the lease and Michigan statutory law also provides landlords with this remedy. Any costs or damages plaintiff sustains in the process of reletting the space may be recovered from the defendant. Accordingly,

IT IS ORDERED that plaintiff's motion for a preliminary injunction hereby is denied.

IT IS FURTHER ORDERED that the order extending the Temporary Restraining Order of the Wayne Circuit Judge hereby is dissolved.