374 So.2d 258 (1979)
ALABAMA EDUCATION ASSOCIATION et al.
v.
The BOARD OF TRUSTEES OF the UNIVERSITY OF ALABAMA et al.
78-1.
Supreme Court of Alabama.
July 6, 1979.
Rehearing Denied August 17, 1979.
*259 Joseph E. Carr, IV, Montgomery, for appellants.
T. W. Thagard, Jr., and David R. Boyd, Montgomery, for appellees.
PER CURIAM.
This appeal is from an order of the Circuit Court of Montgomery County granting appellees' motion for a preliminary injunction. We affirm.
The appellees sought the preliminary injunction prohibiting the enforcement of § 5 of Act No. 12 of the Second Special Session of the 1978 Alabama Legislature. (Act No. 12 is the Education Appropriation Budget for the 1978-79 fiscal year.) The challenged provision of this Act conditions its appropriations upon appellees' providing, at the employee's request, a dues check-off for certain "educator's ... or labor organization[s]." Specifically, § 5 of Act No. 12 provides:
"Of the funds appropriated in Section 5 herein for colleges, universities and schools listed below, no institution shall be eligible to receive appropriations provided herein unless such institution provides its employees, upon their request, payroll deduction of dues from at least seven (7) different pay periods for the local affiliate of any general incorporated statewide educator's organization or labor organization. Deduction of dues shall be made only upon written request of the employee and shall not be construed to *260 grant any organization any bargaining rights upon behalf of the institution's employees. Deduction of dues shall not be required for any organization which serves only persons employed in a particular subject matter area or that is not affiliated with a public statewide employee organization which complies with Alabama statutes." [Emphasis ours.]
Appellees (the Boards of Trustees of the University of Alabama, Auburn University, the University of South Alabama, Troy State University, and Livingston University) challenge the constitutionality of § 5, alleging that it violates § 45 and § 71, Ala.Constitution. Section 45 provides:
"... Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes ...."
Section 71 provides:
"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools. The salary of no officer or employe shall be increased in such bill, nor shall any appropriation be made therein for any officer or employe unless his employment and the amount of his salary have already been provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."
Additionally, the University of Alabama and Auburn University challenge the validity of § 5 on the ground that it is an unconstitutional interference with the management and control of these two universities because the management and control of these universities are expressly established in boards of trustees by § 264 and Amendment No. 161. They argue that, because of the constitutional status of the University of Alabama and Auburn University Boards of Trustees, the Legislature cannot dictate their labor relations and personnel policies by a legislative act. (The other appellees do not raise this issue, presumably because the Boards of Trustees of those schools are established and authorized by legislative act, and not by a constitutional provision.)
In granting appellees' motion for preliminary injunction, the trial court stated that appellees had established a strong probability of prevailing on the merits, i. e., that the "check-off" provision violates the Constitution of 1901. The trial court held that the preliminary injunction would maintain the status quo pending final disposition, and that the failure to grant the requested relief would cause irreparable harm to the plaintiff institutions which depend upon State funding for their continued operation. We agree.
Initially, we define the perimeter of our scope of review in an appeal from an order granting a motion for preliminary injunction. Wide discretion is accorded the trial judge hearing the application and deciding whether to grant a temporary injunction and his action will not be disturbed on appeal unless he abuses his discretion. Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281, 239 So.2d 298 (1970). His discretion is a legal or judicial one subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law. Lorch, Inc. v. Bessemer Mall Shopping Center, Inc., 294 Ala. 17, 310 So.2d 872 (1975). Where an abuse of discretion is clearly made to appear, the appellate court will reverse the order or decree. Lorch, Inc.
While the ultimate test on appeal is whether the trial court abused its discretion, its application must find its source in the initial issues (with their corresponding presumptions and burdens) presented to the trial court. Ultimately, here, the principal issue is the constitutional validity of a challenged portion of a statute. Therefore, presumably, the Act is constitutionally valid. Houston County Board of Revenue v. Poyner, 236 Ala. 384, 182 So. 455 (1938). At 73 Am.Jur.2d, Statutes, § 123, it is stated:

*261 "The rule that every legislative act is presumed to be constitutional and every intendment must be indulged by the courts in favor of its validity, is applicable to statutes claimed to be unconstitutional as in violation of the provision prohibiting statutes from containing more than one subject or object ...."
Furthermore, the law in this State is settled that, on a motion for preliminary injunction, the burden is on complainant to satisfy the court that there is at least a reasonable probability of ultimate success on the merits of the controversy. Postal Telegraph-Cable Co. v. City of Mobile, 179 F. 955 (C.C.S.D. Ala. 1909).
As stated heretofore, the granting or refusing to grant a preliminary injunction is within the sound discretion of the trial judge. Watts v. Victory, 333 So.2d 560 (Ala.1976). To establish an abuse of that discretion, an appellant must show that the trial judge committed a clear and palpable error which, unless corrected, will constitute a manifest injustice. Id.
We find no such plain and palpable error here, nor manifest injustice. We do not think it is apparent that the appellees have no possibility of prevailing on the merits. We must remember that this is an appeal from grant of preliminary injunction, not an appeal after trial on the merits. At this juncture, it appears to us that the Act in question does violate § 45 or § 71 of the Constitution.
The dissent states § 45 does not apply because Act No. 12 is a general appropriation bill which is specifically excepted from § 45. The dissent concludes that Act No. 12 is a general appropriation bill because § 71 says the general appropriation bill shall embrace nothing but appropriations for the three branches of government, for interest on the public debt, and "for the public schools." That conclusion does not necessarily follow, however. The fact that appropriations for "the public schools" may be included in a general appropriation bill does not mean that all bills appropriating money for education are general appropriation bills.
The phrase "the public schools," as used in § 71, does not include universities or colleges. "Public schools" are those schools formerly referred to as "common schools," schools which are provided for in §§ 256-260 of the Constitution. Opinion of the Justices, 229 Ala. 98, 155 So. 699 (1934); Elsberry v. Seay, 83 Ala. 614, 3 So. 804 (1888). These schools are for the benefit of children between the ages of seven and twenty-one years, encompassing, in common terminology, grammar schools and high schools. Adult schools are not a part of the constitutional "public school" system. State Tax Commission v. County Board of Education, 235 Ala. 388, 179 So. 197 (1938).
The appropriation made in Act No. 12, not being an appropriation for "public schools" as that term has been defined, is not an appropriation authorized by § 71 to be made in a general appropriation bill, but is an appropriation falling under that part of § 71 which states: "All other appropriations shall be made by separate bills, each embracing but one subject." The requirements of this section and § 45 are met if the act has one general subject which is contained in its title. Opinion of the Justices, 275 Ala. 254, 154 So.2d 12 (1963).
There is no mention of "dues check-off" in the title to the bill, viz:
"To make annual appropriations for the support, maintenance, and development of public education in Alabama and for debt service and capital improvements for the fiscal year ending September 30, 1979."
The title gives no clue that "dues check-off" is dealt with. The "dues check-off" bears no relation whatsoever to the amount and purpose of the appropriation, or to the accounting and spending procedures to be followed in support of education.
Moreover, the education appropriation bill is for a one-year period, while the "dues check-off" provision seems to contemplate the creation of a permanent system affecting labor relations and university administrative procedures. The "dues check-off" is *262 simply not cognate or germane to the other provisions in the bill.
There is no warning or notice to the members of the legislature nor to the public that "dues check-off" is required as a prerequisite to receiving an appropriation. See Bagby Elevator & Electric Co. v. McBride, 292 Ala. 191, 291 So.2d 306 (1974).
If this Act is not violative of § 45 or § 71, then there is little, if any, room for operation of those sections and extensive "log-rolling" would result to the detriment of the citizens of this state.
If this Act does not violate § 45 or § 71, then any appropriation bill could carry in its body a hidden proviso that no judge, no legislator, nor the executive could receive the appropriations of his respective office until that official performs some act as a prerequisite.
If this were permitted no legislator, no public official, nor the public would know of the existence of the hidden proviso without reading the entire bill. To require reading the entire bill so as to discover its pertinent provisions would clearly fly in the teeth of the requirements of § 45.
The grant of preliminary injunctive relief is appropriate here because there is sufficient evidence to show that appellees might suffer irreparable harm if the preliminary injunction had failed to issue. Written demands for "check-offs" were made on appellees. State officials indicated that the "check-off" provisions would be enforced unless invalidated by the courts. Furthermore, appellees depend in large part on state funds to operate, funds which were granted on the precondition that the "check-off" system is initiated, at considerable expense to the appellees.
A trial judge does not have to find that the party seeking a preliminary injunction would certainly prevail on the merits in order to grant the injunction. Rather, if he finds that the party has presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction. Watts v. Victory, supra; Coxe v. Huntsville Gas Light Co., 129 Ala. 496, 29 So. 867 (1901).
It is thus that we affirm the grant of the preliminary injunction by the trial court. It is unnecessary that we address the management issue.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, ALMON, SHORES and EMBRY, JJ., concur.
MADDOX, FAULKNER, JONES and BEATTY, JJ., dissent.
JONES, Justice, dissenting.
I respectfully dissent.
I agree essentially that our scope of review in appeals from an order granting a motion for preliminary injunction is as stated in the majority opinion. Additionally, injunctions should not be granted unless necessary to prevent irreparable injury. First City National Bank of Oxford v. Whitmore, 339 So.2d 1010 (Ala.1976). While an appeal from an order granting a motion for preliminary injunction generally does not reach the merits of the case, there can be no possibility of irreparable harm if it is apparent that the complainant has no possibility of prevailing on the merits. As stated at 42 Am.Jur.2d, Injunctions, § 354:
"Upon appeal from an interlocutory order relating to injunctive relief, the review of the appellate court is restricted to the propriety of that order; the review does not ordinarily extend to the final merits of the case or to any collateral or subsequent orders. However, if the question of the propriety of the interlocutory order is properly before the appellate court, that court has the power to determine whether the trial court had jurisdiction to grant the order, and may examine the merits of the case if they are sufficiently shown by the pleadings and record, and upon deciding them in favor of the defendant, may dismiss the bill and save the parties the needless expense of further prosecution of the suit, for the *263 preliminary injunction cannot stand if the complaint itself cannot stand ...." (Emphasis added.)
The Plaintiffs base their complaint and motion for preliminary injunction on the constitutional invalidity of § 5 of Act No. 12. The motion hearing proceeded on the issue of the constitutionality of § 5 and, on appeal, both parties have fully briefed and argued the merits of the constitutional issues.
After a thorough review of the issues raised and the applicable law, I find that the Plaintiffs cannot possibly prevail on the merits because § 5 of Act No. 12 (the dues check-off provisions) violates neither §§ 45 and 71 nor § 264 or Amendment No. 161 of the Alabama Constitution of 1901. Thus, there being no possibility of irreparable harm, the injunction should be dissolved.
Section 45 of the State Constitution, by its own express terms, does not apply to general appropriation bills. Section 71 of the Constitution establishes that an appropriation bill for public schools is a general appropriation bill. Therefore, § 5 of Act No. 12 must be tested under § 71 of the Constitution and not under § 45. Cases decided under § 45, however, may determine the § 71 issue by analogy.
In Opinion of the Justices, 275 Ala. 254, 154 So.2d 12 (1963), it is stated:
"It is clear ... that if a separate bill meets the broader requirements of Section 45, supra, it, of necessity, will satisfy the requirements of Section 71, supra."
This statement relates only to that portion of § 71 which states, "All other appropriations shall be made by separate bills, each embracing but one subject." (Emphasis added.) The "other" appropriations encompassed by this language are those appropriations other than a general appropriation. As noted above, appropriations for public schools are general appropriations and therefore the limitations of § 45, or of the last sentence of § 71, are not directly applicable.
Merely because general appropriation bills are exempt from the explicit requirements that such bills contain but one subject, however, there are still inherent limitations on what may be contained in the bills. In Houston County Board of Revenue v. Poyner, supra, it was held:
"The argument [that a general revenue bill is exempt from the singleness of subject requirement of § 45 by the express terms of § 45] amounts simply to this, that the legislature has the power to put anything it pleases into a revenue bill, and such matters, however foreign to such a bill, would be immune from constitutional requirements as to title and singleness of subject. Many illustrations of such spurious matters readily suggest themselves. Important changes might be made in will contests, divorce proceedings, or even some criminal statutes, all under the guise of a general revenue bill, yet having no proper relation thereto. The framers of our Constitution, by this exception, meant no such result. They intended the exception to refer only to a revenue bill as generally understood, and this Court has so interpreted it. [Cited cases omitted.]
"To hold that such spurious matter could be constitutionally enacted by merely adding it to a general revenue bill would nullify the major provisions of section 45, Constitution, for a single subject and a clear title, and thus thwart the manifest purpose of the Constitution makers. When they spoke of the general revenue bill they meant that and nothing more. All matters cognate to such a bill are of course expected to be found therein. Illustrative is the case of Southern Ry. Co. v. Mitchell, 139 Ala. 629, 640, 37 So. 85, 88, where the Court, speaking of a general revenue bill, said: `It was competent to embody in the bill any and all provisions for the raising of revenue, or pertinent or germane thereto, whether expressed in or covered by the title or not.' And we think the corollary of that is equally true, that is, that matters not so pertinent or germane could not be so included ...."
*264 Likewise, all matters cognate to a general appropriations bill are expected to be found therein. To paraphrase the Houston County Board of Revenue opinion: It is competent to embody in the bill any and all provisions for the appropriation of money to the various State universities, or pertinent or germane thereto, whether expressed in or covered by the title or not. This is essentially the same test as the singleness of subject test of § 45. See Yeilding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580 (1936); Ballentyne v. Wickersham, 75 Ala. 533 (1883); Adler v. State, 55 Ala. 16 (1876).
It is clear the "dues check-off" provision contained in § 5 of Act 12 is pertinent and germane to the subject of appropriations for these State universities, as a condition precedent for obtaining appropriated funds.
The remaining issue is raised by the University of Alabama and Auburn University. They contend that § 5 of Act No. 12 interferes with the day-to-day management and control of these Universities, thus violating the Constitution of 1901 (§ 264 and Amendment No. 161), providing that the management and control of these universities rest in boards of trustees. Concisely stated, they argue that, given the constitutional status of the boards of trustees, their power cannot be abrogated by mere legislative enactment. They argue that the dues check-off necessarily interferes with their management because it necessitates the long-run recognition of, and bargaining with, labor unions, as opposed to the present practice of direct bargaining with faculty employees. Furthermore, they argue that the "check-off" provision adds numerous complexities to the daily administration of the Universities' business affairs by requiring additional personnel, and extensive computer reprogramming to implement the "check-off" program.
In Stevens v. Thames, 204 Ala. 487, 86 So. 77 (1920), the Trustees of the University of Alabama sued to enjoin the removal of the Medical College of Mobile from that city. In rejecting a § 264 attack that Acts 1915, p. 133 (authorizing transfer of the medical college), was an attempt to usurp from the Trustees of the University of Alabama their power to "manage and control" the school, the Court ruled:
"... We do not think that the act in question invades the power of management and control of the trustees, within the provisions of section 264, but relates to a matter within the legislative power of the state, and which is not included in the powers of management and control of the trustees, as governed by said section 264 of the Constitution."
Similarly, § 5 of Act 12 relates directly to a matter expressly within the legislative power of the Statethat of general appropriation. We note that the Education Appropriations Act is an extensively detailed line-item budget, specifically spelling out how and where the funds appropriated to these two universities are to be spent. If Plaintiffs' management and control argument is accepted, the logical conclusion is that the entire Appropriation Bill drastically interferes with the management and control of these schools because of its specificity; and, therefore, the entire Act must fail. This would hardly be the result desired by Plaintiffs.
A holding that § 5 of Act 12 is unconstitutional would require this Court to either ignore or overrule established precedent. Because, in my opinion, this Court is not so inclined, I would decide the issue on its merits and thus conserve judicial time and energy. I would reverse and remand this case with instructions to dissolve the temporary injunction and to dismiss the Plaintiffs' case with prejudice.
MADDOX, FAULKNER and BEATTY, JJ., concur.