Appellants Donna McJenkin and Tommy C. McJenkin initiated this cause against Appellee Central Bank of Tuscaloosa, N.A. (Bank), seeking, inter alia, a permanent injunction against the threatened foreclosure of a mortgage by Bank on the home of Ms. McJenkin. Additionally, the McJenkins sought an accounting of all monies paid and owing Bank by them under the mortgage, damages of $125,000 for Bank's alleged breach of contract, and a temporary injunction against the foreclosure pending a final hearing.
On January 15, 1982, the trial court denied the prayer for a temporary injunction. On the same date, the McJenkins filed notice of appeal, accompanied by a court approved supersedeas bond for the explicit purpose of maintaining the status quo among the parties pending an appeal of the court's order. Three days later, on January 18, 1982, in violation of the terms and conditions of the supersedeas, Bank sold the property at public auction. Bank, being the highest and only bidder at the sale, purchased the property and thereupon executed and delivered to itself a mortgage foreclosure deed.
On March 1, 1982, the trial court denied a petition to set aside the mortgage foreclosure deed. Subsequently, the McJenkins filed with this Court a motion to restore injunction and set aside mortgage foreclosure deed during the pendency of this appeal. Because we reverse the trial court's interlocutory order denying the temporary injunction, thus maintaining the status quo during the pendency of the proceedings on the merits, we need not address the motion with respect to Bank's violation of the supersedeas bond.
On August 2, 1977, Tommy C. McJenkin, then single, procured from Bank a loan of $19,500. McJenkin executed and delivered to Bank a promissory note for that amount. The note called for payments of $316.22 per month, commencing on September 2, 1977, and due thereafter by the 2nd of each month. McJenkin also executed and delivered to Bank a real estate mortgage on his homeplace as security for the note. In addition to the traditional default-in-payment acceleration clause contained in the note, the mortgage included a "due on sale" provision.
Subsequent to his signing of the note and mortgage, Tommy and Donna McJenkin were married. In June of 1980, the parties were divorced, with Mr. McJenkin conveying to Ms. McJenkin all of his "estate, right, title, interest" in the property previously mortgaged to Bank as security for the loan.
At the time she obtained the parties' homeplace in 1980, Donna McJenkin discussed with Manley Neighbors, an agent for Bank, the propriety of her maintaining the property in her name and making the monthly payments. According to Ms. McJenkin, Neighbors agreed. While there had been an arrearage, Ms. McJenkin was told by Neighbors to continue making the monthly payments, not let the arrearage get any larger, and catch up as soon as she could. As of January 15, 1982 (the date of the preliminary injunction hearing), Bank had received from Ms. McJenkin all monies then due and owing it, and had given her receipts for them. *Page 155 
Despite the conveyance of the parties' homeplace to Ms. McJenkin by Mr. McJenkin, monthly statements by Bank were thereafter delivered to Mr. McJenkin, who would then forward them to Ms. McJenkin. On or about November 6, 1981, Ms. McJenkin received correspondence from Bank's lawyers to the effect that she was in arrears for September and October of that year, that Bank considered the loan in default and would accelerate immediately. Upon her receipt thereof, Ms. McJenkin phoned Bank's lawyer, explaining that such allegations were erroneous, and that she had in fact remitted both payments to Bank. Ms. McJenkin alleged and testified that she was not in arrears for the months of September or October, as contended by Bank, and that she timely made the December, 1981, and the January, 1982, payments.
During June or July of 1981, Mr. McJenkin, then divorced, filed for bankruptcy. In the course of a hearing thereon, Bank, through its attorneys, raised no objection to the ownership of the property then reposed in Ms. McJenkin, but stated their only concern was the continuation of monthly payments as provided by the mortgage and note.
Bank threatened foreclosure in late 1981, resulting in the instant suit. Despite the inherent complexities of this cause and numerous issues raised by both parties for our consideration, we narrow our focus of concentration to the trial court's denial of the preliminary injunction, which is the only order appealed from.
On January 15, 1982, the trial court conducted a hearing on the McJenkins' request for temporary injunctive relief vis-a-vis Bank's threatened foreclosure of the mortgage. We quote the following pertinent excerpts from the record of that proceeding:
 "THE COURT: . . . This is a lawsuit in which I anticipate a jury will have to decide. . . . I would think an injunction would issue if something were going to happen to the plaintiff to cause him irreparable harm. . . . [I]f steps are being taken to foreclose the mortgage, I would think we would have to hold up on the actual foreclosure until a jury verdict. . . . I think I could give an injunction asking the bank to hold up on the foreclosure proceedings, if nothing else. . . .
". . .
 "THE COURT: Well, I am frequently called upon to stop foreclosure proceedings, and generally it gets down to the issue whether the debt is owed. As far as I know, they are usually issued where these disputes come up. . . . I mean if there is a valid dispute between the parties or if the parties are going to lose their property by foreclosure, I would think generally speaking, of course, an injunction would be issued. . . .
". . .
 ". . . The fact I did issue it, gentlemen, I don't think would prejudice anybody. . . ."
Then, at a later point in the record, the following transpired:
 "THE COURT: Let me ask a question. Are you contending Mr. McJenkin conveyed mortgaged property illegally?
 "MR. RAY: Sir, we have not had an opportunity to file an answer, but he conveyed the property. It has a due-on-sale clause in the mortgage.
". . .
 "THE COURT: Well, what I'm concerned about now, if Mr. McJenkin in some manner, sold, gave away property he no longer has a legal title to, if I could be reasonably satisfied of that fact, I don't think I will issue an injunction.
". . .
 "THE COURT: . . . but I don't think if a man has mortgaged property and disposes of it, which is a criminal act, if I may speak frankly, I don't think under those circumstances I should issue an injunction. . . .
". . .
 "THE COURT: Go ahead, I am somewhat shocked by the turn in events. We have here, well, I will use the term criminal act, . . . *Page 156 
". . .
 "THE COURT: I will say this, gentlemen. I'm not going to issue an injunction where the parties have illegally, if somebody has disposed of mortgaged property.
 "MR. GRAY. Judge, they have not illegally disposed of mortgaged property. This is what we are saying.
 "THE COURT: . . . I don't know; but at this juncture, I just don't feel that I should issue an injunction where the parties have conveyed mortgaged property, which is a felony. . . ."
". . .
 "THE COURT: Let me say this. If Mr. McJenkin had not conveyed his interest in the settlement, I would go ahead and issue the injunction. . . ."
Thereupon, the trial court issued an order denying the temporary injunction. After the trial court's denial of their motion for temporary injunctive relief, but before the conclusion of that hearing, the McJenkins requested and were afforded permission to appeal from that order.
At this point in the record, we find the following:
 "MR. GRAY: I understand. Would you allow us to take an appeal from your order?
"THE COURT: Oh, absolutely.
 "MR. GRAY: Will you set a supersedeas bond, Your Honor, please, so they cannot proceed with the foreclosure? We will post a supersedeas bond. [Emphasis added.]
 "THE COURT: There again will be something that will have to be agreed upon . . . but if you want to agree on a supersedeas — what amount, $5,000?
"MR. RAY: That will be fine."
In Alabama Education Association v. The Board of Trustees ofthe University of Alabama, 374 So.2d 258 (Ala. 1979), the Court stated:
 "Initially, we define the perimeter of our scope of review in an appeal from an order granting a motion for preliminary injunction. Wide discretion is accorded the trial judge hearing the application and deciding whether to grant a temporary injunction and his action will not be disturbed on appeal unless he abuses his discretion. Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281, 239 So.2d 298 (1970). His discretion is a legal or judicial one subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law. Lorch, Inc. v. Bessemer Mall Shopping Center, Inc., 294 Ala. 17, 310 So.2d 872
(1975). Wherein an abuse of discretion is clearly made to appear, the appellate court will reverse the order or decree. Lorch, Inc." 374 So.2d at 260.
The Court went on to hold:
 "To establish an abuse of that discretion, an appellant must show that the trial judge committed a clear and palpable error which, unless corrected, will constitute a manifest injustice."
374 So.2d at 261.
It appears in retrospect that the trial judge premised his denial of the motion for preliminary injunction on the supposition that Tommy McJenkin, through his conveyance of the mortgaged property to his wife, had committed a "criminal act" or a "felony."
Code 1975, § 13-4-1, reads as follows:
 "Any person who sells or conveys any personal
property, upon which he has given a written mortgage, lien or deed of trust, and which is then unsatisfied, in whole or in part, without first obtaining the consent of the lawful holder thereof to such sale or conveyance, shall, on conviction, be fined not more than $500.00 and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months, one or both, at the discretion of the jury." (Emphasis added.)
Conspiciously absent from the statute is any reference to "real" property. And, as this is the only provision within Alabama criminal jurisprudence speaking to the "illegality" of conveying mortgaged property, it *Page 157 
seems apparent that this section formed the basis of the trial judge's sudden turnabout from what seemed a virtual pronouncement of his order granting the temporary injunction.Lorch; Alabama Education Association.
Indeed, conveyance of mortgaged real property, within and without the context of marital dispute settlements, is commonplace. It goes without saying that such conveyances are subject to the terms and conditions of all existing encumbrances and all outstanding interests of third parties. Likewise, the law imposes sanctions upon those who convey mortgaged property with the intent to defraud. But there is nothing, absolutely nothing, that even approaches an illegal, much less criminal, act in Mr. McJenkin's conduct in conveying his interest in the subject property to his former wife.
Taking the McJenkins' allegations and sworn testimony as true for the purposes of our instant review, we agree with the trial judge's initial inclination to grant the temporary injunction. To be sure, if Bank had notice of the transfer of title, accepted eighteen monthly payments thereafter from Ms. McJenkin, and then instituted foreclosure proceedings based solely upon its delayed exercise of the "due on sale" provision, and at a time when all due installments were fully paid, there is more than a mere probability that the McJenkins will prevail in that portion of their pending claim seeking an injunction against Bank's foreclosure of the property.
A "due on sale" acceleration clause, not unlike other acceleration clauses, while giving an option to the holder to declare the full amount due, is not self-executing. Default does not ipso facto mature the whole debt. Walker Bank TrustCo. v. A.P. Neilson, 26 Utah 2d 383, 490 P.2d 328 (1970).[1] And the election of the holder to declare the acceleration of the due date of the whole debt must be exercised within a reasonable time after default. Malouff v. Midland FederalSavings and Loan Association, 181 Colo. 294, 509 P.2d 1240
(1973). See, also, Tierce v. APS Co., 382 So.2d 485 (Ala. 1979).
We are mindful of the fact that this is an appeal from an interlocutory order authorized under ARAP 4 (a)(1)(A), and that the case on the merits is yet to be tried. Nothing we have said in this opinion should be construed as prejudicing the rights of the parties to fully develop the evidentiary bases for their respective claims and defenses. Our recital of the facts is limited to our understanding of the posture of the proceedings before the trial judge at the time of the hearing on the McJenkins' request for temporary injunction.
Under the posture of the case as revealed by the record before us, we hold that the trial judge acted under a clear misapprehension of controlling law in declining to issue a temporary injunction on the stated ground that Mr. McJenkin had committed a criminal act by his conveyance of the mortgaged property to his former wife pursuant to a valid divorce decree issued more than eighteen months previously.
Therefore, we reverse the order of the trial judge and remand this cause with instructions for the issuance of an appropriate order setting aside the foreclosure deed, for correction of the recordation thereof, and for the issuance of an injunction to stay any further foreclosure proceedings pending the outcome of this cause on the merits.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and FAULKNER, J., concur in the result.
MADDOX, J., not sitting.
[1] For a recent United States Supreme Court case upholding the validity of a "due on sale" clause, in the context of a federal savings and loan association's real estate mortgage, see,Fidelity Federal Savings and Loan Association v. De La Cuesta, ___ U.S. ___ , 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). *Page 158