This is an appeal from the Jefferson County Circuit Court's grant of a preliminary injunction in favor of Arthur Stringer and against John Lloyd and Company, Inc., and its two stockholders, John Lloyd and Alan J. Murray.
The case arose out of the following facts:
John Lloyd Company, Inc. (Lloyd Co.) is a corporation engaged in the insurance business as an excess and surplus lines broker. The corporation does business in foreign markets, primarily London, England, insuring difficult or unusual risks referred to it by various agents. Arthur J. Stringer left England to join Lloyd Co. in Mountain Brook as a vice-president in 1967. Prior to 1981, however, Stringer did not have a written contract of employment with Lloyd Co.
On October 27, 1981, Stringer entered into two contracts with Lloyd Co. as part of a comprehensive plan to transfer ownership of the business from its president, John Lloyd, to Stringer and Alan J. Murray. Stringer and Murray bought stock in Lloyd Co. for an amount less than fair market value, in exchange for their executing employment contracts containing covenants not to compete. The covenant included the period of employment and one year following termination, and forbade Stringer from engaging in the insurance business in Alabama.
In February 1983, Lloyd decided to change a portion of Lloyd Co.'s business from a firm it had been doing business with to another firm. Stringer was already in disagreement with Lloyd concerning release of the company's balance sheets to prospective customers, and when he was informed that Lloyd changed firms without consulting him, Stringer felt he would not *Page 1077 
be able to continue working for Lloyd. Consequently, Stringer told Lloyd that he thought it best that he leave Lloyd Co.
Stringer informed Lloyd that he had a possibility of employment with the insurance firm of McGriff Seibels, but that no offer had been made to him. Aware of the problems that were present with Lloyd Co., McGriff Seibels offered to purchase Lloyd Co. Any sale to McGriff Seibels would have been conditioned on the surrender by Stringer and Murray of their Lloyd Co. stock. Stringer and Murray, who owned 49% of the stock in Lloyd Co., rejected McGriff's offer. At this point, Stringer told Lloyd that he hoped to return his stock and have all his agreements with Lloyd cancelled, once Lloyd had hired and trained a suitable replacement. On April 1, 1983, Lloyd hired Jim Bain as vice-president, and Bain began working one month later.
In May 1983, Stringer sought to have a document prepared to transfer his shares back to the company. He employed the same attorney who drew up the original agreements between Stringer and Lloyd Co. The "Withdrawal from Stock Redemption Agreement and Resignation as Director" agreement provided, in part, that:
 [A]lthough [Stringer] is continuing his employment with the Corporation, [he] nevertheless desires to (a) transfer his twenty-nine (29) shares of stock of the Corporation to the Corporation in return for $580.00, (b) withdraw as a party to the Stock Redemption Agreement dated October 27, 1981, made by and among the parties hereto, and (c) resign as a director of the Corporation.
On June 2, 1983, Stringer executed this document in the presence of Lloyd and Murray. Stringer asked Lloyd if there was anything else that needed to be done, or anything else that needed to be signed. Although Lloyd claims he just answered "no," both Murray and Stringer agree that Lloyd responded: "[I]f there is, we can take care of it later."
Stringer continued to work for Lloyd Co. throughout the summer. On September 6, 1983, Lloyd asked Stringer about his plans for other employment. Over the next couple of days, Stringer spoke with several persons in the business about possible job openings, and each asked Stringer whether his current employment contract contained a covenant not to compete. On September 9, Stringer told Lloyd about these conversations, and informed Lloyd that he assured the persons he contacted that the covenant would be cancelled when he left Lloyd Co. Lloyd, however, stated that the covenant not to compete would be enforced even after Stringer left the company.
A few days passed, and Stringer reiterated to Lloyd his belief that they had reached an understanding earlier in the year that all agreements between the two would be cancelled, including the covenant not to compete. Lloyd maintained that the covenant would be enforced, which forced Stringer to remain with Lloyd Co. Stringer notified Lloyd by letter dated September 18, 1983, that as long as there was any question concerning the enforcement of the covenant not to compete, he could not afford to leave; and thus intended to remain a diligent and faithful employee of Lloyd Co. Despite this assurance of continued loyalty, at the end of September 1983, Lloyd terminated Stringer's employment.
Stringer filed a complaint to enjoin Lloyd from attempting to enforce the covenant not to compete in his employment contract. Stringer also applied for a preliminary injunction. Lloyd Co. appeals from the trial court's issuance of the preliminary injunction, which restrains Lloyd Co. from attempting to enforce the covenant not to compete.
The dispositive issue for our review is whether the trial court abused its discretion in issuing the preliminary injunction.
Alabama courts follow the rule that the trial court's grant of a preliminary injunction will not be disturbed on appeal, absent a gross abuse of discretion. Alabama EducationAssociation v. Board of *Page 1078 Trustees, 374 So.2d 258 (Ala. 1979). The result of this abuse must be of a type that would constitute a manifest injustice unless corrected on appeal. Id. Such abuse of discretion is not present in this case; therefore, the judgment of the trial court is due to be affirmed.
Over the years this court has developed a test by which trial courts can review applications for temporary relief. In DoubleC. Productions, Inc. v. Exposition Enterprises, 404 So.2d 52
(Ala. 1981), we set forth the requirements that must be met when a preliminary injunction is sought:
 1. ". . . if [the trial judge] finds that the party has presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction." (Citation omitted.)
 2. ". . . An injunction should not be granted unless it is necessary to prevent irreparable injury." (Citation omitted.)
 3. "Injunctions . . . will not be granted merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law." (Citations omitted.)
404 So.2d 52, 54 (Ala. 1981).
Inherent in the use of this tripartite standard, either by the trial court or the reviewing court, is the implementation of a balancing process, whereby the court weighs the relative hardships that either party may suffer against any benefits which might flow from the grant of the preliminary injunction.
Stringer has satisfied the first prong of the three-pronged test by showing the existence of a right to be protected; namely, the right to continued employment in the insurance business in Alabama. After his termination by Lloyd, Stringer was without a job, and, but for the issuance of the injunction, would have been without much hope of finding one in his field. The preliminary injunction was necessary to allow Stringer any chance at procuring employment in the insurance business without having to relocate. Also, the trial court did not burden Lloyd Co. with any measurable detriment by issuing the injunction. Thus, the benefit to Stringer greatly outweighs the harm, if any, to Lloyd Co.
We also agree with the trial court that Stringer's injury is both imminent and irreparable in a court of law, thus satisfying the remaining requirement set forth in Double C.Productions, Inc., supra, for the issuance of a preliminary injunction. Stringer would not be able to find a job if the covenant not to compete were enforced. He was financially unable to risk the costs of starting his own business, which prompted him to inform Lloyd in writing of his intentions to stay with Lloyd Co. Soon thereafter, however, he was fired. Unless the trial court fashioned some type of relief, Stringer, to gain employment in his field, would have to leave his home in Alabama. Alternatively, he could remain in Alabama, but be forced to accept some other kind of job outside his profession.
Stringer applied for equitable relief. He was willing to relinquish all rights he had in the management of Lloyd Co., in return for a release from the contract. The evidence is uncontroverted that Stringer sold his shares of stock back to Lloyd Co., at far less than market value. This he did in exchange for Lloyd's promise that the covenant not to compete would not be enforced against him.
Lloyd seeks the best of both worlds. He argues that the comprehensive plan entered into by Stringer is invalid, thus allowing him to fire Stringer; but at the same time the plan is valid, so that the covenant not to compete can be enforced. To so hold would effectively allow Lloyd to be unjustly enriched. On the other hand, upholding the preliminary decision of the trial court does justice for both parties — Lloyd Co. retains the shares of stock sold to it by Stringer at a price far less than they command on the open market, and Stringer is able to seek employment, unhindered by the covenant not to compete. *Page 1079 
This case is different from the majority of cases involving covenants not to compete, as here the validity of the covenant itself is not questioned, just its enforcement. The trial court found that Stringer had bargained with Lloyd for his release from all agreements, including the covenant not to compete. We find no error by the trial court which would require reversal.
For all of the above-stated reasons, the trial court's order granting a preliminary injunction is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.