PER CURIAM.
This dispute involves the concession rights at the Fall 1986 Alabama State Fair, which opened October 2, 1986, and similar rights in 1987 and 1988.
The City of Birmingham is the fee simple owner of the property known as the Alabama State Fairgrounds. From 1969 through May 1984, the Alabama State Fair Authority (ASFA) had a written 15-year lease with the City for the use of the land. Since May 1984, the City has leased the property to the ASFA on an oral, month-to-month basis. On November 26, 1985, the Alabama State Fair Authority held a special meeting of its board of directors to discuss a proposal by Link Carnival to conduct the carnival and concession at the Fall 1986 Alabama State Fair. At that meeting, mention was also made that Murphy Brothers Expositions was interested in submitting a proposal for the Fall 1986 Fair carnival and concessions operation. Two members of the board expressed concern that Mruphy’s request for a one-week postponement of the Fair’s opening would conflict with a fair in Montgomery and also noted that Murphy Brothers owned fewer than a quarter of the proposed carnival rides, and that it would therefore be necessary to subcontract with others to provide the necessary rides. After this discussion, the Link proposal was accepted by the board, “... with the consideration of the Birmingham City Council approval [sic].” At the regular meeting of the ASFA board, December 12, 1985, a motion was carried approving a contract referred to as the “Link Carnival Contract,” and a contract was executed between the Alabama State Fair Authority and an entity by the name of “Link Shows, Inc., An Alabama Corporation.”
On June 19, 1986, the present appellee, under the name “Link Carnival, Inc., an Alabama Corporation,” filed a complaint for declaratory relief, temporary restraining order, and injunctive relief against the City of Birmingham and Southern Expositions, Inc., the entity selected by resolution of the City Council on June 17, 1986, to operate the Fall 1986 Alabama State Fair and carnival concession. Link Carnival claimed that the City’s action posed “an irreconcilable conflict” and that enforcement of one contract necessarily precluded enforcement of the other. Link contended that the dispute was whether the ASFA had the exclusive authority to contract for operation of the annual Alabama State Fair or whether the City’s ownership of the Alabama State Fairgrounds entitled the City to select the operator of the carnival and concessions. Link further alleged that the City had acted arbitrarily and capriciously in authorizing the Mayor to contract with Southern Expositions without having seen the proposed contract or considered its terms.
A temporary restraining order was entered by the Circuit Court of Jefferson County on June 19, which provided that the defendants
“are hereby restrained from taking any action which would interfere with the terms of the ‘contract between the Alabama State Fair Authority and Link Shows, Inc., an Alabama corporation’ dated December 12, 1985....”
The City’s motion to dissolve the temporary restraining order and to dismiss the complaint was denied on June 27, 1986. The order also stated:
“By consent of counsel for all parties, the ‘Temporary Restraining Order’ issued June 19, 1986 is extended and continued in effect until the hearing on the merits in this cause and until the Court has issued a final ruling.”
The court set August 4 as the date for a consolidated hearing on the request for a preliminary injunction and a hearing on the merits. The parties were ordered to be available for depositions on three days’ no *794 tice for those within Alabama and on one week’s notice for those located outside the State. The City filed its answer and counterclaim acknowledging Rodman T. Link as the person controlling Link Carnival, Inc., and recognizing Link Carnival, Inc., as an Alabama corporation as of February 3, 1986. It further recognized that prior to February 3, 1986, Link Carnival, Inc., had been known as Rod Link, Inc., and North Alabama State Fair, Inc., and was authorized to transact business in Alabama as such before February 3, 1986.
Affirmative defenses asserted by the City are that the entity known as Link Carnival, Inc., is not the real party in interest, has no standing, has failed to name necessary parties, is guilty of laches and unclean hands, has waived the cause of action at issue, has an adequate remedy at law, is estopped to maintain this action, was not a corporation qualified to do business in Alabama prior to conducting business in the State, has practiced fraud in the inducement by representing to the ASFA that it is an Alabama corporation, and that the court has no jurisdiction.
The City also counterclaimed for declaratory and injunctive relief to bar Link Carnival from “asserting his alleged contract (license) for use the City’s fairground property [sic].” On July 16, 1986, the City also filed a motion for summary judgment, alleging that no genuine dispute existed, and also: (1) that the ASFA had only a month-to-month lease with the City for use of the Alabama State Fairgrounds ¡when it contracted with Link Shows for three years on December 12, 1985; (2) that Link Shows was not qualified to do business in Alabama on December 12, 1985; (3) that the ASFA board members who executed the contract with Link Shows were not authorized to do so; (4) that the ASFA approval of the Link proposal on November 26,1985, was made conditional upon the express approval by the council of the City of Birmingham and that the City never gave such approval; and (5) that Link Shows, Inc., submitted a written offer on January 27, 1986, to lease and operate the fairgrounds for five years pursuant to a solicitation of long-term development proposals for the property. The City’s summary judgment and Link’s cross motion for summary judgment were denied July 28, 1986.
On April 1, 1986, the court responded to Link Carnival’s motion for default judgment against Southern Expositions. The court said that Mr. Gerald Murphy, owner of a 65% interest in Southern Expositions, had obstructed discovery by Link Carnival by failing to appear, as scheduled, for his deposition and, subsequently, by walking out of his re-scheduled deposition before it was completed. Although the court refused to order a default, it determined that it would be improper to proceed with the trial on the merits on August 4, as planned, since Link Carnival had been prevented from completing its discovery. Instead, the court said the hearing on the preliminary injunction should proceed as scheduled and that the hearing on the merits “ ‘should then proceed in accordance with the normal procedure.’ ”
The court found that there was, in fact, no entity known as “Link Shows, Inc., an Alabama Corporation.” There was, however, it found, a corporation known as Rod Link, Inc., an Alabama corporation, the predecessor of the plaintiff, Link Carnival, Inc., an Alabama corporation. The court concluded:
“There is more than a sufficient amount of evidence to submit to the jury as to who the parties intended to be named in the contract and whether or not ‘Link Shows, Inc., an Alabama Corporation’ was named in error.”
The affidavit of Robert L. Ashford, ASFA board member who participated in the acceptance of Link’s proposal, stated that it was his intention to award the contract in question to “Rod Link’s Alabama Corporation.” He added that “obtaining in a proper form the service of Mr. Link was the objective.”
The court also found and concluded that:
“Act No. 215, General Acts of Alabama of 1947, as amended by Act No. 428 of the 1949 Legislature and Act No. 1026 of the 1961 Legislature (‘the Acts') clearly provides that ASFA has the au *795 thority to enter into contracts for the purpose of putting on the annual state fair in Jefferson County, Alabama. Whether or not the contract in this case was properly executed on behalf of the ASFA may depend on the circumstances existing at the time of execution, but there is more than sufficient evidence for this question to go to the jury.
“The actions taken by the Defendants are interfering with the Plaintiffs performance of its contract with the ASFA.
“It is the opinion of the Court that the evidence produced at the hearing on the preliminary injunction is more than sufficient to satisfy the requirement that the Plaintiff prove it has a fair likelihood of success on the merits of the case.
“The damages to the business reputation of the Plaintiff and the inability to determine the future damages which may result from the Defendants’ actions are the type of irreparable injuries which will sustain the issuance of a preliminary injunction.”
With regard to Southern Exposition’s suit for $1,000,000.00 in damages against Link Carnival for interference with Southern Exposition’s contract with the City, the court said that “any damages which may be suffered by Southern Expositions, Inc., will be the direct result of the actions of Murphy.”
The preliminary injunction was issued August 12, 1986,
“... restraining and enjoining the Defendants, City of Birmingham and Southern Expositions, Inc., from taking any action which would interfere with the terms of the ‘Contract Between Alabama State Fair Authority and Link Shows, Inc., an Alabama Corporation’ dated December 12, 1985. Such actions include, but are not limited to, representations by Southern Expositions, Inc. that it will put on the Alabama State Fair in the fall of 1986, 1987 or 1988 and/or placing any advertisements to that effect in the various trade journals.”
The City of Birmingham appeals the order granting Link Carnival, Inc., a preliminary injunction. Southern Expositions, Inc., has not appealed. The question before us is whether the trial court abused its discretion by granting a preliminary injunction. We hold that it did.
We have said:
“Wide discretion is accorded the trial judge hearing the application and deciding whether to grant a temporary injunction and his action will not be disturbed on appeal unless he abuses his discre-tion_ His discretion is a legal or judicial one subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law.” (Citations omitted.)
Alabama Education Association v. Board of Trustees, 374 So.2d 258 (Ala.1979); Drill Parts & Service Co. v. Jay Mfg. Co., 439 So.2d 43 (Ala.1983). In Johnson v. United States Dept, of Agriculture, 734 F.2d 774 (11th Cir.1984), the Eleventh Circuit Court of Appeals said that four factors must be considered when ruling on a motion for a preliminary injunction. The standard requires
“(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.” (citations omitted).
Id. at 781. See also Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974); Accord, United States v. Lambert, 695 F.2d 536 (11th Cir.1983).
In his order granting the preliminary injunction, Judge Carl concluded that more than sufficient evidence was presented at the preliminary injunction hearing to support the conclusion that Link had “a fair likelihood of success on the merits of the case.” We are of the opinion that there was not a substantial likelihood that plaintiff could have prevailed on the merits of this case; therefore, we must conclude that the preliminary injunction was unwarranted.
*796 The undisputed facts are that the City of Birmingham is the fee owner of the State Fairgrounds property and has chosen to lease the property to the ASFA on an oral, month-to-month basis since expiration of a long-term lease in 1984. The ASFA recognized this limitation on its tenancy, and, prior to contracting with Link in December 1985, the ASFA board noted that the proposed contract between the ASFA and “Link Shows, Inc.” was subject to the approval of the Birmingham City Council. Without the approval of the City of Birmingham, the ASFA lacked the authority to contract for use of the State Fairgrounds property beyond the term of its month-to-month lease. The City never agreed to the terms of the ASFA-Link contract.
By Act No. 428 of the 1949 Alabama Legislature, a city is authorized to covenant with the ASFA
“that it will not acquire, construct or operate, or permit the acquisition, construction, or operation within said city of any fairgrounds, exhibits, exhibitions, or other installations, facilities and places of amusement, entertainment, recreation and cultural development, in competition with the Authority, so long as any bonds, notes or other obligations of the authority shall remain outstanding.”
Act 428, Ala.Acts (Act 428 is the same as Act 1026 of the 1961 Legislature). The City of Birmingham contends that in the absence of any such covenant between the City and the ASFA, the City has the implied authority to perform the same functions performed by the ASFA. Nothing in Act 428 grants the ASFA the exclusive right to conduct the Alabama State Fair, the City argues; therefore, it contends that the Birmingham City Council acted within its rights when it authorized the mayor to negotiate for operation of the State Fairgrounds. On the other hand, Link contends that the City acted illegally.
The City does not dispute the ASFA’s authority to contract for the carnival and concessions at the Alabama State Fair, but persuasively argues that if such a contract requires use of the City’s property without its consent, such a contract obviously is incapable of enforcement. The City rejects Link’s argument that it had long acquiesced in the ASFA’s practice of contracting without City approval and points to the month-to-month oral lease agreement with the ASFA as evidence of the City’s intention to assert its authority over the use of the property. The effect of the preliminary injunction, the City argues, is to prevent the owner of the State Fairgrounds from asserting its ownership rights to the property for three years, even though the ASFA is only a month-to-month tenant. This Court has held that
“[a] continuous tenancy upon a monthly rental basis is a ‘tenancy at will,’ commonly called a tenancy from month to month, and such tenancy is continuous until terminated by notice to quit.”
Arbuthnot v. Thatcher, 237 Ala. 593, 188 So. 245 (1939).
In McDevitt v. Lambert, 80 Ala. 536, 2 So. 438 (1887), this Court said that a month-to-month tenant is entitled to a month’s notice to quit, in the absence of a statutory provision to the contrary. 80 Ala. at 539, 2 So. at 438. But for the preliminary injunction, the City could terminate the ASFA’s month-to-month lease by giving thirty days' notice. In essence, the preliminary injunction prevents the City from terminating ASFA’s lease, since termination of the lease would, most certainly, constitute “interference” with the contract, which the injunction forbids.
Section 35-9-5, Code of Alabama (1975), provides further that where a tenant holds over without special agreement, the landlord may recover possession of the rented premises by giving the tenant 10 days’ notice. This Court has held that the purpose of the notice is to change the tenant’s status “in relation to the landlord or lessor, and to terminate his existing lease and possessory right thereunder.” Jones v. Duncan, 250 Ala. 587, 35 So.2d 345 (1948). Whether by agreement between the City and the ASFA or, in the event the ASFA had become a holdover tenant without such agreement, the law is clear that the City, *797 as lessor, may terminate the month-to-month lease by giving proper notice.
The ASFA acknowledges that the City of Birmingham has the right of final approval over any contract for use of the State Fairgrounds. This was not the case when the ASFA had a long-term lease with the City and a multi-year contract could be performed within the period of the tenancy. Here, the ASFA did not have the approval of the City to contract for the use of the State Fairgrounds beyond its month-to-month tenancy.
The City of Birmingham clearly manifested its intention to assert its influence over use of the Alabama State Fairgrounds by electing to lease the property to the ASFA on a month-to-month basis only. The ASFA is not a party to this suit and has recognized that, given the nature of its tenancy, the City has the right to approve or disapprove of contracts involving use of the State Fairgrounds which would extend beyond the term of the ASFA’s lease. In the absence of such approval, the ASFA-Link contract must be considered a nullity. To hold otherwise would abrogate the City’s rights as lessor of the State Fairgrounds. The preliminary injunction would give effect to a contract made by a month-to-month tenant which would impress upon the City a three-year restriction on the use of its property. The preliminary injunction cannot stand and is, therefore, vacated.
Having answered the pivotal question involved in this litigation, we pretermit discussion of other issues raised by the City. Inasmuch as we find no legal basis upon which the plaintiff can prevail, this cause is remanded for the trial judge to enter an order vacating the preliminary injunction and dismissing plaintiff’s complaint in its entirety.
Furthermore, since the plaintiff’s complaint is to be dismissed, the issue of the court’s recusal is by reason thereof rendered moot.
INJUNCTION VACATED, WITH INSTRUCTIONS TO DISMISS PLAINTIFF'S COMPLAINT.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.